**SAN JACINTO SAVINGS & LOAN, et al., Plaintiffs,**

v.

**Kathy KACAL, Defendant–Third Party Plaintiff–Appellant,**

v.

**Officer Tommy HALE and City of Waxahachie, Texas, Third Party Defendants–Appellees.**

No. 90–1572

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

April 15, 1991.

---

698

Lawrence D. Sharp, Dallas, Tex., for defendant-third party plaintiff-appellant.

Robert E. Luxen, Craig B. Florence, Gardere & Wynne, Cole Halliburton, Dallas, Tex., for third party defendants-appellees.

Before JOHNSON, SMITH, and WIENER, Circuit Judges.

PER CURIAM:

The original plaintiff, San Jacinto Savings and Loan,[1] initiated this action by filing suit against Kathy Kacal, Defendant/Third–Party Plaintiff–Appellant (Kacal), in Texas state court for breach of a lease. Kacal asserted a third-party claim against the City of Waxahachie, Texas (the City) and a city police officer, Tommy Hale (Hale), collectively, the Third–Party Defendants–Appellees, for violation of 42 U.S.C. § 1983, the fourth, fifth, and fourteenth amendments of the United States Constitution, and the Texas Tort Claims Act. Hale and the City removed the case to the United States District Court for the Northern District of Texas. After removal, the trial court assigned this case to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) for all further proceedings. The Magistrate Judge[2] entered a Rule 54(b) judgment dismissing all of Kacal's federal law claims against Hale and the City and remanding to state court the remaining state law claims. Kacal timely appealed challenging the dismissal of her federal claims.

## I.

## BACKGROUND

In September 1987, Kacal opened an arcade and soda fountain named "Visions" in Waxahachie, Texas. In general, Visions catered to minors. Because of greatly declined patronage and income, Kacal closed Visions fourteen months later. When the landlord, San Jacinto Savings and Loan, sued for nonpayment of rent on the Visions lease, Kacal responded by bringing a third-party action against the City and Hale on the ground that the decline in patronage and income was a direct result of their tortious and wrongful acts. In addition to state law claims under the Texas Tort Claims Act, Kacal pled an action under 42 U.S.C. § 1983 alleging that, acting under color of state law, the City through its police department unconstitutionally deprived her of property rights to her soda fountain business profits and of her liberty to operate the business. In her complaint, Kacal alleged that (1) the City's police officers implemented a plan to shut down Visions; (2) the plan included a campaign to harass customers with the specific intent to discourage patronage; (3) one officer, Hale, defamed Kacal before a public gathering, as part of the plan, by falsely suggesting that illegal drug activity was rife at Visions and that Kacal condoned such activity; (4) the plan was implemented by officers who were acting as agents of the City and of the State of Texas under color of state law; and (5) the plan was implemented as a municipal policy or custom, or with direct or ratified authority, or by recklessly hiring unfit persons.

For purposes of summary judgment, Kacal produced evidence that one of the Waxahachie police officers had said that the police needed to do something to shut down Visions. Kacal's own affidavit said that in 1987, Officer Hale had told her "[y]ou will be lucky to stay open six months; Waxahachie has never let a business like that stay open." That affidavit also asserted that it was known in Waxahachie that the police would shut down any new business that caters to teenagers, that an arcade called "Galaxie" had been forced to close under similar circumstances some years earlier, and that, while Visions was open, Waxahachie police officers had forced some of the customers en route to Visions to turn their cars around and leave. Kacal also produced several written statements by former patrons and employees saying that they had never seen any drug activity or underage drinking at Visions, but that the Waxahachie police had, nevertheless, harassed customers. For example, in one written statement submitted as summary judgment evidence, a former patron said that his car, glove box, console, trunk, and person had been searched. He said that he "was told on several occasions to leave and not to

---

1. San Jacinto Savings and Loan is not a party to this appeal.

2. Hereinafter referred to as the district court.

return for any reason ever again," and that on one occasion, he and several friends were told to leave or be arrested on several separate charges. Another former patron wrote that he had witnessed Waxahachie police officers "not letting people on the parking lot leading to Visions."

The City and Hale moved for summary judgment on both the federal and the state claims. Finding that Kacal failed to produce any evidence that the City or Hale placed any legal barriers on her pursuit of business ventures, the district court ruled that, even if Kacal's allegations and summary judgment evidence are assumed to be true, the actions of the City and Hale were "insufficient to rise to the level of a constitutional deprivation." The court reasoned that Kacal remained free at all times to pursue her business and that she has not been prohibited from reopening Visions or any other business venture. The district court also granted the City's and Hale's motion for summary judgment on Kacal's fourth amendment claims, finding that Kacal had no standing to assert the fourth amendment rights of others. Because the district court dismissed all of Kacal's federal claims, it declined to exercise pendent jurisdiction over the remaining state law claims, remanding them to state court. Kacal timely appealed.

## II.

## DISCUSSION

### A. Standard of Review

This court reviews the grant of a summary judgment motion de novo, using the same criteria used by the district court in the first instance. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). We "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party." *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir.1986) (citing *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 873 (5th Cir.1984)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Id.*

### B. Section 1983

Section 1983 affords redress against a person who under color of state law deprives another person of any federal constitutional or statutory right. *Thibodeaux v. Bordelon*, 740 F.2d 329 (5th Cir. 1984); *Phillips v. Vandygriff*, 711 F.2d 1217, 1221 (5th Cir.1983), *cert. denied*, 469 U.S. 821, 105 S.Ct. 94, 83 L.Ed.2d 40 (1984). Section 1983 does not create substantive rights; rather, it merely provides a remedy for deprivations of rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985). To bring an action within the purview of section 1983, a claimant must first identify a protected life, liberty, or property interest, and then prove that government action resulted in a deprivation of that interest. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979); *Mahone v. Addicks Utility Dist.*, 836 F.2d 921 (5th Cir.1988); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir.1984). Section 1983 does not, however, provide a right to be free of injury whenever a government actor may be characterized as a tortfeasor. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

In this case, the parties focus on whether Hale or the City violated Kacal's liberty and property interest in her business by allegedly defaming her and harassing her customers. In *Paul*, the Supreme Court said that there was no "constitutional doctrine converting every defamation by a public official into a deprivation of liberty

within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 702, 96 S.Ct. at 1161. The Court held that "reputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' nor 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1161.

Section 1983 does, however, protect against the deprivation of a property interest "whenever the State seeks[3] to remove or significantly alter" the status of liberty or property interests recognized by state law.[4] *See id.* at 710–11, 96 S.Ct. at 1164–65. Additionally, "[t]here are other interests, of course, protected not by virtue of their recognition by the law of a particular State but because they are guaranteed in one of the provisions of the Bill of Rights which has been 'incorporated' into the Fourteenth Amendment. Section 1983 makes a deprivation of such rights actionable independently of state law." *Id.* at 710 n. 5, 96 S.Ct. at 1165 n. 5 (citing *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)).

*Paul* clarified the meaning of the Court's previous pronouncement, *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), on the relationship between reputation injuries and section 1983 claims. In *Constantineau*, the state of Wisconsin enacted a statute that empowered a sheriff to post notice prohibiting the sale of intoxicants to a person who was subject to specified conditions, such as being "dangerous to the peace." *Id.* at 434, 91 S.Ct. at 508. Pursuant to that statute, a Wisconsin sheriff then posted such a notice prohibiting the sale of intoxicants to Con-

stantineau. The Supreme Court held that the statute violated the due process clause because it deprived Constantineau of a right previously held under state law—the right to purchase or obtain liquor—without notice or an opportunity to be heard. *See id.* at 437, 91 S.Ct. at 510 ("Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."). " 'Posting,' therefore, significantly altered [Constantineau's] status as a matter of state law, and it was that alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards." *Paul*, 424 U.S. at 708–09, 96 S.Ct. at 1164.

■ This circuit has consistently applied *Paul* by requiring that a section 1983 claimant show a stigma *plus* an infringement of some other interest. *See, e.g., Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1215 (5th Cir.1989); *Geter v. Fortenberry*, 849 F.2d 1550, 1557 (5th Cir. 1988); *Vandygriff*, 711 F.2d at 1221. To fulfill the stigma aspect of the equation, a claimant must "prove that the stigma was caused by a false communication." *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). This Court has found sufficient "stigma" only in concrete, false factual representations or assertions, by a state actor, of wrongdoing on the part of the claimant. *See Connelly*, 876 F.2d at 1215. To establish the "infringement" portion of the "stigma plus infringement" test, a claimant must establish that the state sought to remove or significantly alter a life, liberty, or property interest recognized

---

**3.** In interpreting *Paul v. Davis,* the Seventh Circuit read *Paul* as "mak[ing] clear that to find the deprivation of a property interest [a claimant's] legal rights or status must have been removed or significantly altered." *Goulding v. Feinglass,* 811 F.2d 1099, 1102 (7th Cir.) (citing *Paul,* 424 U.S. at 710–11, 96 S.Ct. at 1164–65), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987).

**4.** Violation of a state statute is not actionable under § 1983. *See Jones v. Diamond,* 594 F.2d 997, 1011 (5th Cir.1979). To determine whether a protectable property interest exists, however,

the court must turn to state law. *Malcak v. Westchester Park Dist.,* 754 F.2d 239, 242 (7th Cir.1985).

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

and protected by state law or guaranteed by one of the provisions of the Bill of Rights that has been "incorporated." *See Paul*, 424 U.S. at 710–11 & n. 5, 96 S.Ct. at 1164–65 & n. 5.

■ The City and Hale argue that Kacal failed to produce any summary judgment evidence to suggest that Hale or any City official made a false communication. The record contains evidence that the police officers of the City communicated that drugs were being bought and sold in the parking lot of Visions. Hale, in his affidavit, admits that he made a speech to his church congregation in which he said that on a typical Friday night, teenagers use narcotics and drink beer in the parking lot of Visions. Kacal, on the other hand, submitted several written statements by former employees and patrons all indicating that they had never seen drug or alcohol consumption at or near Visions.

Kacal also asserts that Hale's speech communicated that Kacal condoned the alleged drug and alcohol incidents. Although the district court did not reach this issue because it assumed, arguendo, that the allegations in Kacal's complaint were true, the record contains sufficient evidence to raise a genuine issue of material fact as to whether *widespread* drug and alcohol activity actually occurred on a *regular basis* at or near Visions. The record does not contain, however, any evidence that the City or Hale made a concrete assertion that Kacal condoned the alleged alcohol and drug activity.

The City and Hale also argue that Kacal failed to establish that the state had deprived her of a right or benefit previously conferred by state law or guaranteed by one of the "incorporated" provisions of the Bill of Rights. But clearly, Kacal has asserted that the fifth and fourteenth amendments include the right to have property and the benefits from it, as well as the liberty to operate a legitimate business, free from arbitrary deprivation by local police acting under the color of state law. *See Vandygriff*, 711 F.2d at 1222 ("It re-

quires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the freedom and opportunity that it was the purpose of the [fourteenth] Amendment to secure."), *clarified on rehearing*, 724 F.2d 490 (5th Cir.1983), *cert. denied*, 469 U.S. 821, 105 S.Ct. 94, 83 L.Ed.2d 40 (1984).

In efforts to refute Kacal's position, the district court, the City, and Hale rely heavily on the Seventh Circuit's opinion in *Goulding v. Feinglass*, 811 F.2d 1099 (7th Cir.), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987). In *Goulding*, the plaintiff alleged that Internal Revenue Service employees violated his constitutional rights by conspiring to destroy his tax law practice. The plaintiff also alleged that the defendants harassed and threatened him, and made defamatory statements about him to his clients, causing him to lose business. Noting that "the infliction by the government of a stigma on one's reputation, without more, does not infringe upon a liberty interest protected by the Constitution's due process safeguards," the Seventh Circuit held that the plaintiff's legal rights or status had not been altered because the plaintiff was still licensed to practice law and remained free to pursue his law practice. *Id.* at 1103.

Seeking to analogize the facts of the instant case to the facts of the *Goulding*, the City and Hale argue that Kacal cannot show that a legal right or status has been removed or significantly altered. They point out that Kacal remained free to pursue her business just as the plaintiff in *Goulding* remained free to practice law. In rejecting Kacal's section 1983 claim, the district court reasoned that because Kacal's business was not condemned, because she had not lost her operating license, because the City had not restricted her right to do business in the past, present, or future, and because Hale's remarks did not prohibit the public from patronizing Visions, the City had not deprived her of her continuing right to do business.[5]

---

**5.** The City and Hale argue that Kacal is free to start her business again, so she has not been

deprived of a protected right. But surely the law is not so perverse as to require that Kacal

We find this case factually distinguishable from *Goulding,* on which the district court, the City, and Hale rely. In this case, Kacal introduced summary judgment evidence indicating that the Waxahachie police repeatedly harassed Kacal's patrons at her place of business,[6] threatened to arrest patrons if they did not leave, prevented patrons from entering the Visions parking lot, and stopped at least one vehicle en route to Visions telling its occupants that they had to turn the car around. In *Goulding,* there is no indication that the IRS agents harassed the attorney's clients, nor any indication that the agents went to the attorney's office and physically blocked the entrance, or that they threatened to initiate audits or file charges on the clients who refused to discontinue retaining Goulding.

The *Goulding* case is distinguishable for another reason. That case held that the government had not significantly altered or deprived the attorney of his liberty interest in practicing law or his property interests in the profits therefrom, because he was still able to practice law even if the government had caused him to lose some clients. In this case, there is evidence that the comprehensive, concerted actions of the police caused Kacal to lose so much of her business that she had to close her doors and default on her lease. There is a substantial difference between the actions of the governmental agents in *Goulding,* who only communicated remotely with sophisticated adults regarding the professional ability of a lawyer, and the actions of the uniformed Waxahachie police in marked patrol cars confronting impressionable teenagers face to face and making remarks in the nature of authoritative commands at or immediately adjacent to Kacal's place of business. Another important distinction lies in the differences in the relationship of business to premises. A tax attorney conducts much of his business by mail and by telephone so that his office location may only be of secondary importance; Visions, on the other hand, was a retail entertainment business, so that the location and nature of the premises, and access to it, were of primary importance. Comfortable, and even inviting, ingress and egress, free of hassle and harassment, are key ingredients to the success of businesses such as Kacal's.

Relying on *Wade v. Goodwin,* 843 F.2d 1150 (8th Cir.), *cert. denied,* 488 U.S. 854, 109 S.Ct. 142, 102 L.Ed.2d 114 (1988), the City and Hale also argue that Kacal's section 1983 claim was properly dismissed because the decline in patronage resulted from the choices made by private citizens. In *Wade,* the state police director compiled a list of persons who posed threats to law enforcement personnel. Members of the news media filed a Freedom of Information Act request for the list. After the state police director released the list to the media, several state and local newspapers published it. *Id.* at 1151. The list included the plaintiff's name. The plaintiff filed a section 1983 action alleging that his reputation had been harmed and that, as a result of that harm, he would be unable to obtain future employment or credit. *Id.* at 1152. The Eighth Circuit held that the plaintiff's alleged inability to make a living did not implicate any action by the state beyond the alleged defamatory remarks: "Any such injury could arise only through the acts of private individuals as a result of [the plaintiff's] claimed reputational impairment." *Id.*

The City's reliance on *Wade* is misplaced. In this case, the record contains summary judgment evidence demonstrating that neither the alleged defamation alone nor the free choice of private citizens caused Kacal's decline in patronage. Instead, the record contains evidence that the police officers' continual harassment of Kacal's

---

attempt to start her business anew in some other location when the future actions of the police are so predictable based upon their past action in this and other instances.

**6.** It appears from the record that Visions was located in a building that had its own contig-

uous parking lot, so the defendants' actions in or on the parking lot were just as much at Kacal's place of business as they would have been if conducted within the four walls of the establishment.

young and easily intimidated patrons caused the decline in patronage.

The City and Hale also urge that Kacal's interest in the profits [7] of her business does not rise to the level of a protectible property interest because the anticipated profits were too speculative in nature and because there is no constitutionally guaranteed interest or state conferred right to anticipated or desired profits. Again, we disagree. Kacal's property interest in her business is essentially her interest in the lost profits, which are sought merely as the measure of damages in this action. Kacal's property interest in the profits of her business and her liberty interest in operating her business do rise to the level of protectible interests. *See Vandygriff,* 711 F.2d at 1222.

The City's and Hale's emphasis on the alleged defamation of Kacal and her business is a red herring. Kacal need not prove defamation to prove a violation of section 1983 in this case. Kacal does not and need not show that the alleged defamatory remarks actually caused the decline in patronage. Instead, it is sufficient to show that the officers' harassment of Kacal's patrons was, as the summary judgment evidence indicates, the direct cause of the failure of her business. Apart from any alleged defamation, Kacal can succeed in a section 1983 claim by showing that the officers, acting under color of state law, sought to remove or significantly alter her liberty and property interests in Visions without due process of law.[8]

We find that the district court erred in holding that Kacal's summary judgment evidence was insufficient to support a genuine issue of material fact that the City and Hale sought to remove or significantly alter Kacal's property and liberty interests in operating her business.

7. The City and Hale suggest that Kacal seeks to recover damages from loss of employment as an employee of Visions, and that as an employee, she has no protectible property interest in continued employment. Clearly, Kacal seeks compensatory damages from the loss of profit to her business, and thus, we do not address whether Kacal had a protectible property interest in continued employment as an employee of Visions.

8. Section 1983 provides:

## C. Fourth and Fourteenth Amendments

 Although we find the district court's dismissal of Kacal's section 1983 claim erroneous, we also find its dismissal of Kacal's fourth amendment claims was proper. The right to be free from unreasonable searches and seizures is a personal right which cannot be asserted vicariously. *See Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 425–26, 58 L.Ed.2d 387 (1978). Because the record in this case is devoid of any evidence that Kacal was personally subjected to an illegal search or seizure, Kacal has no standing to assert the rights of third parties who may have been subjected to such searches or seizures while at Visions.

## D. Qualified Immunity

The City and Hale argue that the dismissal of Kacal's claims should be affirmed because Hale is immune from suit under the doctrine of qualified immunity and because the City had not adopted a custom or policy that deprived Kacal of a protected liberty or property interest. Because both of those assertions depend on the outcome of genuine issues of material fact, we do not decide them here. Therefore, summary judgment on this issue is not proper.

## III.

## CONCLUSION

For the foregoing reasons, we REVERSE the part of the summary judgment that dismissed Kacal's section 1983 claim and remanded her state claims to state court; AFFIRM the part of the summary judgment that dismissed Kacal's fourth amendment claims; and REMAND this

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983 (1982).

case to the district court for further proceedings consistent with this opinion.