Joseph Peter CESCON

v.

**Glen DOVE.**

**Civ. A. No. 92–1979.**

United States District Court, E.D. Pennsylvania.

June 22, 1992.

---

Edward E. Kopko, Pottsville, Pa., for plaintiff.

Jeffrey L. Schmehl, Rhoda, Stoudt & Bradley, Reading, Pa., for defendant.

## OPINION

CAHN, District Judge.

This lawsuit seeks to place the Pottsville Police Department, and indeed every police department, on the horns of an intractable dilemma. The defendant, a Pottsville Police Officer, has asked the court to resolve the dilemma by cutting off one of the horns pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the court will do so.

When ruling on a 12(b)(6) Motion, the court

> must accept as true all factual allegations in the ... complaint and all reasonable inferences that can be drawn from them. The ... complaint must be construed in the light most favorable to the plaintiffs, and can be dismissed only if the plaintiffs have alleged no set of facts upon which relief could be granted.

*Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). The facts, as set forth in the plaintiff's proposed amended complaint,[1] are as follows:

6. On May 17, 1990, in Pottsville, Schuylkill County, Pennsylvania, Cescon was operating a vehicle on North Progress Avenue, at the intersection of Arch Street in Pottsville, Schuylkill County, Pennsylvania.

7. On May 17, 1990, Glen A. Dove was in the uniform of the Pottsville Bureau of Police, operating a motor vehicle containing the markings of the Pottsville Bureau of Police.

8. On May 17, 1990, Dove caused Cescon to stop his motor vehicle by activating the red emergency lights.

9. After being stopped by Dove, Dove ordered Cescon out of the vehicle and then and there observed Cescon to have glassy, blood shot eyes, disheveled clothing, to speak with a slurred, incoherent tone, to sway on his feet, to stagger when he walked, and to possess about him the odor of intoxicating liquors. At the time that Dove stood next to Cescon Dove knew that Cescon was under the influence of alcohol and such that his ability to operate a motor vehicle was impaired and that Cescon could not stand or walk without assistance.

10. In response to questions posed to Cescon by Dove, Cescon stated to Dove that it was his birthday, that he had been drinking, that he did not want any trouble, and Cescon further asked Dove to be given a ride home.

11. Dove ordered and directed Cescon to perform tests of physical ability commonly known as "field sobriety tests."

12. Dove ordered and directed Cescon to perform a particular field sobriety test by ordering Cescon to stand on one foot with his arms stretched outright and in doing so Cescon, because of his apparent intoxicated condition, was caused to lose

---

1. In its Motion to Dismiss, the defendant also asked the court to dismiss the plaintiff's claim pursuant to Fed.R.Civ.P. 12(b)(1), since the plaintiff had not pleaded the jurisdictional prerequisites to suit. In his response, the plaintiff proposed an amended complaint which he believes can cure these deficiencies. Even though the plaintiff is represented by counsel, and is therefore not entitled to the deference accorded *pro se* plaintiffs, the court would have asserted jurisdiction over this claim pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) if the

plaintiff had not filed an amended complaint. The court must note in passing that, even under the plaintiff's amended complaint, the court must interpret the pleadings, since the plaintiff invoked the jurisdictional authority of 28 U.S.C. § 1342 (precluding federal jurisdiction in rate cases involving state regulated public utilities), rather than 28 U.S.C. § 1343 (relating to jurisdiction over civil rights). As this Opinion demonstrates, however, determining the correct jurisdictional predicate is the least of the plaintiff's difficulties.

his balance, fall on his left ankle causing it to fracture.

Pl. Answer to Def. Motion, Ex. A.[2] The plaintiff seeks damages to compensate him for his broken ankle.

The dilemma this suit poses for the Pottsville Police Department is obvious. On the one hand, without field sobriety tests, officers will not be able to establish probable cause to arrest, and gather sufficient evidence to allow district attorneys to convict, drivers for operating their vehicles under the influence of alcohol. On the other hand, this suit would impose civil liability on officers for conducting field sobriety tests.[3] Such liability would certainly hamper the efforts of law enforcement officials to curb the scourge of drunk driving. *See generally, Hammer v. Gross,* 932 F.2d 842, 852–53 (9th Cir.) (en banc) (Kozinski, J. concurring in part), *cert. denied,* — U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991) (discussing the scourge of drunk driving). Fortunately, this dilemma is easy to resolve. Under the applicable legal standards, the plaintiff has failed to state a claim upon which relief can be granted.

In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court determined that claims alleging that a police officer used excessive force in the course of making an arrest or an investigatory stop were to be evaluated under the Fourth Amendment's "objective reasonableness" standard, rather than under the "shocks the conscience" substantive due process standard. *See Graham,*

490 U.S. at 388, 109 S.Ct. at 1867. *See also Hammer,* 932 F.2d at 845; *Hulsey v. State of Texas,* 929 F.2d 168, 172 (5th Cir.1991); *Spera v. Lee,* 728 F.Supp. 366, 368 (E.D.Pa. 1990).

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake.
>
> \*    \*    \*    \*    \*    \*
>
> The "reasonableness" of a particular use of force must be judged form the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

*Graham,* 490 U.S. at 396, 109 S.Ct. at 1872 (citations omitted).

It is settled law that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872 (citation omitted). *See also San Jacinto Savings & Loan v. Kacal,* 928 F.2d 697, 700 (5th Cir.1991) ("Section 1983 does not, however, provide a right to be free of injury whenever a government actor may be characterized as a tortfeasor."); *Davis v. Forrest,* 768 F.2d 257, 258 (8th Cir.1985) (Sloviter, J.) ("[N]ot every assault and battery by a police officer is a violation of the Constitution."); *Davidson v. O'Lone,* 752 F.2d 817, 827 (3d Cir.1984), *aff'd,* 474 U.S.

---

**2.** Since the averments in the plaintiff's proposed amended complaint are identical to the averments in the plaintiff's original complaint except for the paragraph numbers, the court shall proceed as if the amended complaint had been filed, and as if the defendant had moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6).

**3.** Arguments that "safe" field sobriety tests could be performed without incurring liability would be of little comfort to officers in the field. Field sobriety tests typically test the subject's sense of balance. The court takes judicial notice of the fact that, when one's sense of balance has been impaired by the consumption of alcohol, one may fall. Since losing one's balance is the paradigmatic way in which a subject fails a field

sobriety test, every field sobriety test, by definition, includes the risk of falling.

Although the court is aware that a "breathalyzer" or a blood test can be used to determine sobriety, the court is unwilling to set a precedent which would, in effect, force police officers to "take every drunk in" to either the police station or the hospital for testing in order to avoid liability. A police officer's decision, made in the field, to have a suspect perform field sobriety tests before employing more intrusive tests (such as a blood or breathalyzer test at the hospital or station house), must be respected. Finally, this court is unwilling to set a precedent which would force police departments to choose between either incurring the expense of equipping all of its officers with portable breathalyzers or incurring the expense of tort judgments.

327, 106 S.Ct. 677, 88 L.Ed.2d 662 (1985) ("a tort committed by a state official acting under color of state law is not, in and of itself, sufficient to show an invasion of a person's constitutional rights under § 1983."); *Friedman v. Young*, 702 F.Supp. 433, 436 (S.D.N.Y.1988) ("Not every common law tort committed by a law enforcement officer gives rise to a constitutional claim."); *Dobson v. Green*, 596 F.Supp. 122, 125 (E.D.Pa.1984) ("section 1983 is not to become a font of tort law").[4] Where, as here, the plaintiff has not even alleged that the officer pushed or shoved him, it is clear that the plaintiff has failed to state a claim. *See Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir.1990) (dismissing an excessive force claim because allegations that "angry words were exchanged" cannot demonstrate a use of force); *Spera*, 728 F.Supp. at 368 (dismissing claims against a police officer who "used no force"); *Ferry v. Bergbigler*, 615 F.Supp. 90, 91–92 (W.D.Pa.1985) (dismissing a complaint where "there was no use or threat of force"). *See also Hulsey*, 929 F.2d at 172 (dismissing a complaint because the plaintiff failed to allege the use of excessive force); *Freeman v. Elgin Sweeper Co.*, 885 F.2d 825, 825–26 (11th Cir.1989), *cert. denied*, 495 U.S. 907, 110 S.Ct. 1929, 109 L.Ed.2d 293 (1990) (finding that the plaintiff's claim that his decedent was killed in a traffic accident with a city street sweeper did not state a § 1983 claim); *Simons v. Montgomery County Police Officers*, 762 F.2d 30, 33 (4th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986) (dismissing a complaint where the plaintiff alleged that an officer had pointed a gun at him and said "don't move, police"). Put another way, in order for force to be objectively unreasonable under the Fourth Amendment, there must be some showing of a use of force.[5] Where, as here, the plaintiff cannot make

such a showing, the claim must be dismissed.

---

**4.** This is because Section 1983 does not create substantive rights; it simply allows plaintiffs a remedy for the violation of the rights created by the Constitution and federal statutes. *See Graham*, 490 U.S. at 394, 109 S.Ct. at 1870–71; *San Jacinto*, 928 F.2d at 700; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir.1990).

**5.** The necessity for a showing of a use of force in order to state a claim is further bolstered by the fact that courts have held that a police officer is constitutionally entitled to use some degree of force when making a stop or an arrest. *See Graham*, 490 U.S. at 396, 109 S.Ct. at 1871–72; *Hammer*, 932 F.2d at 845.