**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-10096

RANDALL BROWN; MICHAEL BARRARES,

Plaintiffs-Appellants,

VERSUS

OLEN MANNING, ET AL.,

Defendants,

LORI DELGRIPPO, also known as Lori Keefer; CALVIN SIEG; JIM TOWE;
JAY NORRIS,

Defendants-Appellees.

Appeal from the United States District Court
For the Northern District of Texas
(97-CV-113)
December 6, 2000

Before DUHÉ and PARKER, Circuit Judges, and FOLSOM[1], District
Judge.

PER CURIAM:[2]

Appellants Randall Brown and Michael Barrares appeal the district court's grant of summary

judgment in favor of Appellees Lori Delgrippo, Calvin Sieg, Jim Towe and Jay Norris. We have

carefully reviewed the briefs, the record, and the district court rulings in this case, and find no error.

We AFFIRM.

---

[1]District Judge of the Eastern District of Texas, sitting by designation.

[2]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

BACKGROUND AND PROCEDURAL HISTORY

Appellants operated an automotive reconditioning business. In 1995, they became a target of an investigation by a special FBI auto theft task force. During the investigation, all ten trucks which the Appellants had reconditioned and resold were seized from Appellants' customers on the suspicion that they were reconditioned with stolen parts. Delgrippo and Sieg are FBI agents involved with the task force. Towe is a Texas Department of Public Safety Officer who participated in several of the seizures. Norris is a U.S. Marshall and a Texas Ranger associated with the task force whose investigation led to the seizure of one of the trucks.

Appellants sued Appellees and other defendants, alleging causes of action under 42 U.S.C. § 1983 for illegal search and seizure under the Fourth Amendment, and a deprivation of due process under the Fifth and Fourteenth Amendments[2]; and state law claims of trespass, conversion, and tortious interference with business relations. In making their due process claim, Appellants relied on Paul v. Davis, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). In that case, the Supreme Court held that a charge of defamation might state a cause of action under § 1983 when an individual's reputation is stigmatized in connection with the denial of a liberty or property interest. Id. at 709-11, 96 S. Ct. 1164-65. Accordingly, we have held that this "stigma-plus-infringement" test may be met when the plaintiff proves (1) "concrete, false factual representations or assertions, by a state actor, of wrongdoing on the part of the claimant" and (2) "that the state sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or guaranteed by one of the provisions of the Bill of Rights that has been 'incorporated.'" San Jacinto

_____

[2]Because Delgrippo and Sieg are federal agents, the magistrate judge and the district court treated the § 1983 claims against them as Bivens actions rather than § 1983 claims.

2

Savings & Loan v. Kacal, 928 F.2d 697, 701-02 (5th Cir. 1991). Appellants claimed that the seizures, along with certain derogatory comments the Appellees allegedly made about them to former customers, forced their business into financial ruin and caused them a loss of goodwill, thereby depriving them of a protected property interest under Texas law.

The district court dismissed the illegal search and seizure, trespass and conversion claims as to each Appellee because Appellants no longer owned the trucks in question at the time of the seizures, and they therefore lacked standing. It also dismissed the tortious interference claims against Delgrippo and Sieg, finding they enjoyed absolute immunity from suit for torts committed in the course and scope of their employment under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. ("FTCA"). Delgrippo and Sieg also moved for a dismissal under Fed. R. Civ. P. 12(b)(6) of the § 1983 due process claim, arguing that they were entitled to qualified immunity from suit. The district court denied this motion, finding that Appellants had alleged facts sufficient to state a claim under the stigma-plus-infringement test and § 1983.

Thereafter, each Appellee moved for summary judgment on the remaining claims, partially on the basis of qualified immunity. In response to each summary judgment motion, Appellants moved for a continuance under Fed. R. Civ. P. 56(f) to conduct discovery prior to a ruling. Appellants argued that because there were pending claims of qualified immunity which had yet to be resolved, they had been prohibited from engaging in any formal discovery under the rule of Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).[3] In addition, they

_____

[3]Up to the time the district court ruled on the summary judgment motions giving rise to this appeal, it had not resolved the qualified immunity claims of at least Norris and Towe. Norris initially asserted a qualified immunity defense in his first 12(b)(6) motion, filed in response to the Appellants' original complaint. In a 1997 order, the district court explicitly found that the Appellants had not alleged facts sufficient to overcome Norris's immunity claim at that stage of the litigation. Later, in 1998, the district court ruled on a

3

claimed that they could not legally compel persons to whom the Appellees had allegedly made defamatory remarks to give statements without using the deposition process. In each case, the district judge or the magistrate judge refused to grant the continuances. Thereafter, adopting the recommendations of the magistrate judge, the district court granted summary judgment for all Appellees on all remaining claims.

## DISCUSSION

We review summary judgment rulings de novo, employing the same standards as the district court. Stults v. Conoco, Inc., 76 F.3d 651, 654 (5th Cir. 1996). Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). We understand Appellants' appeal to be directed only to the grant of summary judgment for Appellees on the § 1983 due process claim. Therefore, the illegal search and seizure and state law tort claims are not before us.

We begin by noting that although the district court held that Appellants lacked standing to complain of the seizures, Appellants nevertheless devote a significant portion of their brief to the issue of probable cause to seize. Appellants' argument seems to be that Appellees "stigmatized" their reputation under the stigma-plus-infringement test not only by making the alleged defamatory

---

second set of 12(b)(6) motions filed by Norris, Delgrippo and Sieg in response to the Appellants' amended complaint. The only parties urging dismissal of any claims based on qualified immunity for the purposes of this ruling were Delgrippo and Sieg. The district court dismissed the illegal seizure, trespass and conversion claims as to each movant based on standing, and the tortious interference claim as to only Delgrippo and Sieg based on the FTCA. However, although the district court did not explicitly address the issue of qualified immunity, it rejected Delgrippo's and Sieg's motion to dismiss the due process claim. Therefore, it overruled their qualified immunity defense by implication.

Towe first asserted a qualified immunity defense in his answer. In 1999, the district court dismissed the illegal seizure, trespass and conversion claims as to Towe on standing grounds. Because the court granted summary judgment to Norris and Towe on the remaining claims on other grounds, it never reached their claims of qualified immunity.

4

remarks, but also through their conduct in seizing the trucks. They contend that because they are required by Texas law to warrant the titles to the trucks and protect their purchasers against claims of theft, their business reputation and property interests were damaged by seizures conducted on less than probable cause. To this end, Appellants rely on our decision in Marrero v. City of Hialeah, 625 F.2d 499 (5th Cir. 1980).

We reject Appellants' argument. In Marrero, the defamation by public officials was alleged to be only one cause of the loss of the plaintiffs' business reputation. The plaintiffs alleged their reputations were also injured as a result of an illegal search and seizure of their jewelry store. Id. at 513. The Court recognized that the stigma-plus-infringement test requires that the defamation cause the denial of a protected liberty interest, and that the alleged defamation in Marrero had not caused the denial of the plaintiffs' Fourth Amendment rights. Id. at 519. Nevertheless, since the defamation allegedly occurred in concert with the illegal search and seizure, we found the stigma-plus-infringement test was satisfied. Id. However, Marrero is distinguishable because in that case, the search and seizure was allegedly conducted in violation of the plaintiffs' Fourth Amendment rights, not those of a third party customer, as in the instant case.[4]

Therefore, Appellants' due process claim must be made out based only on the alleged derogatory remarks. In granting summary judgment for Appellees, the district court adopted the report and recommendations of the magistrate judge, who found: (1) Appellants had not alleged that

---

[4]We note that in Kacal, we held that the plaintiff in that case was not required to prove defamation to show a violation of § 1983. Instead, it was sufficient for her to show that the failure of her business was the result of police officers' continued harassment and intimidation of her teenage customers which prevented them from patronizing her soda shop. Kacal, 928 F.2d at 699-700, 703-704. However, Appellants in the instant case have presented no evidence that the task force members made any such deliberate or direct effort to stop any of Appellants' customers from visiting their place of business or patronizing their services.

5

Norris made any false assertions of wrongdoing about them at all; (2) only one affidavit submitted by Appellants contained an allegation of a disparaging remark by Towe, and there was no showing that the comment was made to a person with an on-going business relationship with Appellants; and (3) Appellants had failed to come forward with admissible evidence that Delgrippo and Sieg told any third parties that Appellants were "operating an illegal chop shop" and were "thieves and crooks." Moreover, the district judge adopted the magistrate's finding that the vehicle seizures did not occur until January 1995, but Appellants' business had ceased operation and had no property as of December 31, 1994.[5] Therefore, Appellees' conduct "could not have adversely affected a then existing property interest of Plaintiffs' business." Brown v. Manning, No. 3-97-CV-113-L (N.D. Tex. Sep. 21, 1999) (report and recommendations of United States Magistrate Judge).

We have carefully reviewed the record and we agree with the district court that Appellants fail to show a genuine issue of fact. The Appellants submitted an affidavit from only one witness about the alleged derogatory remarks. That witness, Jimmy Harper, stated that Towe told him, among other things, that Appellants were "thieves" and "it was a matter of time until they went to the penitentiary." Supplemental Appendix to Plaintiff's Supplemental Response and Memorandum to Defendant-Towe's Motion for Summary Judgment at 139. He also allegedly cautioned them from doing business with Appellants. However, the affidavit does not allege where and when the statement was made, and Appellants have not presented a genuine issue of material fact that the statement resulted in the infringement of a tangible interest, as required by the stigma-plus-infringement test.

Appellants argue that they were unable to come forward with evidence sufficient to withstand

---

[5]Appellants state that they "declared" their business closed as of this date, but this decision was made in the Spring of 1995.

the summary judgment motions because they were prohibited from engaging in discovery due to the Appellants' pending qualified immunity claims. In Harlow v. Fitzgerald, the Supreme Court stated that the issue of qualified immunity is a threshold question, and that discovery should not be allowed until that question is resolved. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 736. This rule is designed to shield government officials from the burdens and costs of litigation and to prevent disruption of governmental responsibilities. Id. at 817, 102 S. Ct. at 2737-38.

Appellants contend that because they had not been able to conduct discovery, the denial of their Rule 56(f) motions for a continuance was in error. We review a district court's denial of a party's Rule 56(f) motion for a continuance to conduct discovery only for abuse of discretion. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 28 F.3d 1388, 1395 (5th Cir. 1994).

We agree with the reasons given by the district judge and magistrate judge and find no abuse of discretion. Rule 56(f) permits the district court to grant the moving party a continuance to take depositions or conduct further discovery, if the moving party demonstrates that he cannot present facts essential to justify his opposition to the summary judgment motion by affidavit. With respect to Norris, the magistrate judge noted the heightened pleading requirements for stigma-plus-infringement claims against public officials under Blackburn v. City of Marshall, 42 F.3d 925, 935-36 (5th Cir. 1995). He then ruled that Appellants should have been able to identify with specificity any false statements made by Norris, and the persons to whom such statements were allegedly made, prior to filing their complaint. With respect to the remaining Appellees, the district judge found that Appellants could not show why further discovery was needed under Rule 56(f) as required by Stults,

7

76 F.3d at 657-58 and <u>Krim v. BancTexas Group, Inc.</u>, 989 F.2d 1435, 1442 (5th Cir. 1993). The Appellants had not shown that their witnesses had refused to provide testimony by affidavit, nor had Appellants recounted any unsuccessful attempts to obtain such testimony. Appellants stated that only <u>one</u> of the many witnesses whom they claimed they needed to depose had refused to provide testimony by affidavit, but the district court found that this conclusory assertion was not supported by the record.

We also point out that the district court had likely rejected the qualified immunity claims of Delgrippo and Sieg by implication in its 1998 order denying their motion for a 12(b)(6) dismissal.[6] In fact, the magistrate judge issued a report nearly one year prior to the district court's summary judgment <u>stating</u> that Judge Solis had overruled these claims.[7] However, Appellants made no formal attempt to depose Delgrippo or Sieg or engage in other discovery as a result of either the district court's ruling or the magistrate's report, nor did they seek any clarification from the court of the basis of its denial of Delgrippo's and Sieg's 12(b)(6) motion. Indeed, the Appellants made absolutely no formal discovery request during the almost three years that lapsed from the filing of their complaint until the district court's grant of summary judgment. Appellants have not pointed out any order of the district court limiting discovery in this case, and we have found none.

We realize that the Supreme Court has placed restrictions on discovery in qualified immunity cases. However, we direct Appellants to our en banc decision in <u>Schultea v. Wood</u>, 47 F.3d 1427 (5th Cir. 1995), where we stated:

---

[6]<u>See</u> <u>Brown v. Manning</u>, No. 3-97-CV-113-L (N.D. Tex. Mar. 23, 1998) (memorandum opinion and order) and discussion at <u>supra</u> note 2.

[7]<u>See</u> <u>Brown v. Manning</u>, No. 3-97-CV-113-L (N.D. Tex. Jan. 12, 1999) (report and recommendations of United States Magistrate Judge).

> [When a defendant pleads the defense of qualified immunity, the] district court may
> ban discovery at this threshold pleading stage and may limit any necessary discovery
> to the defense of qualified immunity. The district court need not allow any discovery
> unless it finds that plaintiff has supported his claim with sufficient precision and
> factual specificity to raise a genuine issue as to the illegality of defendant's conduct
> at the time of the alleged acts. Even if such limited discovery is allowed, at its end,
> the court can again determine whether the case can proceed and consider any motions
> for summary judgment under Rule 56.

Id. at 1434. Therefore, Appellants were entitled to request the district court to explicitly permit discovery, at least on the issue of qualified immunity. This they did not do.

Moreover, Appellants do not explain how seeking a continuance would have helped them overcome Harlow's restrictions. A continuance simply delays the proceedings; it does not grant the movant relief from any perceived limitations on discovery. Appellants made no attempt during the year and a half that this case languished on the district court's docket prior to their first 56(f) motion, nor at any time thereafter, to obtain clarification from the district judge of the permissible limits of discovery.[8] Therefore, we do not see how any further delay would have resolved the matter. Rule 56(f) is "designed to minister to the vigilant, not to those who slumber upon perceptible rights." Resolution Trust Corp. v. North Bridge Assocs., 22 F.3d 1198, 1203 (1st Cir. 1994).

We find no merit in Appellants' remaining claims of a conspiracy against them and Delgrippo's alleged liability as a supervisor of the task force.

### CONCLUSION

Because we have found no error in the district court's decisions to grant summary judgment for Appellees and deny Appellants' motions for a continuance, we AFFIRM.

---

[8]Furthermore, we note that counsel for the Appellants failed to appear at the hearing on this first Rule 56(f) motion. See Brown v. Manning, No. 3-97-CV-113-L (N.D. Tex. Jan. 12, 1999) (order denying plaintiffs' motion for a continuance).

AFFIRMED.