# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 28, 2021

Lyle W. Cayce
Clerk

No. 20-40599

A-Pro Towing and Recovery, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Martin Cantu, Sr.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:19-CV-16

Before King, Dennis, and Ho, *Circuit Judges*.

Per Curiam:*

Defendant Martin Cantu, Sr., is a city commissioner in Port Isabel, Texas who owns (along with other family members) several towing companies. This 42 U.S.C. § 1983 suit arises out of certain actions Cantu is alleged to have taken with respect to the Port Isabel Police Department's management of its "wrecker rotation list"—the list that dictates which

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

towing company will be called to perform nonconsensual towing services for the department on a given day.

## I.

Plaintiff A-Pro Towing and Recovery, L.L.C. (A-Pro) alleges that Cantu violated its rights to equal protection and due process by using his position as city commissioner to divert government referrals away from A-Pro and to Cantu family towing companies. Relying, *inter alia*, on the affidavit of a former police department supervisor, A-Pro asserts that on three unspecified occasions, Cantu called the police department's rotation-list manager on A-Pro's assigned day, identified himself as "Commissioner Cantu," and told the manager to skip over A-Pro and direct all towing requests to one of Cantu's companies. On one of these occasions, the police chief allegedly told the list manager to carry out Cantu's instructions because Cantu "[was] a city commissioner." When the list manager expressed concerns that Cantu was "improperly using the [l]ist and creating a monopoly," the police chief allegedly instructed the manager to drop the issue because Cantu was a commissioner and therefore could "do what he want[ed]." A-Pro also claims that the police chief would sometimes reassign A-Pro's days to a Cantu family company himself.

The district court granted Cantu summary judgment. A-Pro appeals.

## II.

"This court reviews a grant of summary judgment de novo, applying the same standard as the district court." *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

No. 20-40599

"All facts and reasonable inferences are construed in favor of the nonmovant, and the court should not weigh evidence or make credibility findings." *Id.*

### III.

### A.

A-Pro does not assert that Cantu discriminated against it on account of its membership in a traditional protected class. Rather, it claims that "Cantu made sure that Port Isabel police intentionally treated A-Pro differently than how his family's companies were treated."

"A class-of-one equal-protection claim lies 'where the plaintiff alleges that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "Typically, a class of one involves a discrete group of people, who do not themselves qualify as a suspect class, alleging the government has singled them out for differential treatment absent a rational basis." *Id.* (quoting *Wood v. Collier*, 836 F.3d 534, 541 (5th Cir. 2016)).

Assuming *arguendo* that a class-of-one equal-protection claim is cognizable here, A-Pro's claim fails.[1] "Because there is no suspect class, the

---

[1] The Supreme Court has held that "a 'class-of-one' theory of equal protection has no place in the public employment context." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594 (2008). *See also id.* at 605 ("[W]e have never found the Equal Protection Clause implicated in the specific circumstance where, as here, government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner."). And this court has since held that *Engquist*'s bar "applies . . . to a local government's discretionary decision to include or not include a company on a non-consent tow list," *Integrity*, 837 F.3d at 586, as well as its decision to remove a company from a non-consent tow list, *see Rountree v. Dyson*, 892 F.3d 681, 684–85 (5th Cir. 2018) ("If a city has the discretion to choose from whom it contracts private services, then it must equally retain the discretion to choose when to terminate such relationship."). It is

[government action] 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* at 589 (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

Here, A-Pro's evidence against Cantu (rather than against the police chief or other actors) is an affidavit averring that, on a few occasions, Cantu instructed the police to skip A-Pro because it had "an outstanding bond," expired insurance, or an "out of commission" status. These stated reasons are obviously rational. And despite multiple opportunities to do so, A-Pro has pointed to no evidence that A-Pro was qualified and able to provide services on the specific days that Cantu allegedly redirected business away from A-Pro. Accordingly, A-Pro's equal protection claim fails.

A-Pro protests that it was Cantu's burden to identify which dates A-Pro was unqualified to tow, and that there is a "factual issue . . . as to whether the preferential treatment Cantu arranged was due to A-Pro's qualifications, or Cantu's rent-seeking." But "the burden is on the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis.'" *Id.* (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)). A-Pro has simply failed to carry that burden.[2]

---

arguable, then, that a decision about which towing company to call for a given job on a given day is the kind of inherently discretionary decision that has been shielded from class-of-one equal-protection challenges. But we need not decide that issue here because A-Pro's claim fails on the merits.

[2] Because A-Pro has failed to show it was qualified to operate on the days in question, it has also failed to show disparate treatment. For example, A-Pro provides no evidence that Cantu companies *were* called to tow with outstanding bonds or expired insurance. In other words, while A-Pro "generally alleges that other similarly situated [companies] were treated differently, . . . [it] points to no specific [company or companies] and provides no specifics as to their violations." *Rountree*, 892 F.3d 681 at 685. "An

No. 20-40599

**B.**

A-Pro also claims that "Cantu's successful campaign to deprive [A-Pro] of towing jobs violated its Fourteenth Amendment right to occupational liberty." *See, e.g.*, *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 702 (5th Cir. 1991) ("[T]he fifth and fourteenth amendments include . . . the liberty to operate a legitimate business, free from arbitrary deprivation by local police acting under the color of state law.").

A-Pro's due process claim suffers from some of the same defects as its equal protection claim. For example, there is still no evidence to refute Cantu's stated reasons for diverting work away from A-Pro.

Moreover, an unpublished opinion suggests that A-Pro's alleged liberty deprivation is insufficient to be actionable. In *Doss v. Morris*, 642 F. App'x 443 (5th Cir. 2016), this court observed that "government actions that cause 'a brief interruption' of a person's occupational calling do not amount to a deprivation of [a] liberty interest in the same way as 'a complete prohibition of the right to engage in a calling.'" *Id.* at 447 (quoting *Conn v. Gabbert*, 526 U.S. 286, 292 (1999)). The panel then interpreted our precedent as recognizing that "a plaintiff's liberty interest in operating a business [is] not violated where 'the government [has] not significantly altered or deprived [a plaintiff] of his liberty interest in practicing [his profession] or his property interests in the profits therefrom." *Id.* (quoting *San Jacinto Sav. & Loan*, 928 F.2d at 703) (last two alterations in original). "Defendants' conduct did not deprive Plaintiffs of their liberty interest in operating their legal business" because "the evidence . . . failed to show that

allegation that others are treated differently, without more, is merely a legal conclusion that we are not required to credit. [A-Pro]'s equal protection claim fails." *Id.* (footnote omitted).

Plaintiffs' ability to operate their business was significantly altered or impaired." *Id.*

A-Pro concedes that the relevant standard is whether its business was "significantly altered or impaired." Because the evidence suggests that A-Pro was inconvenienced by only a "brief interruption" in its access to government employment (more precisely, government referrals), this case is unlike the cases in which the Supreme Court has recognized a "generalized due process right to choose one's field of private employment"—cases that "all deal[t] with a complete prohibition of the right to engage in a calling." *Conn*, 526 U.S. at 291–92. In short, because A-Pro has not produced evidence of a significant alteration or impairment of its business, A-Pro's due process claim fails as a matter of law.

We affirm.