William H. WADE, Appellant,

v.

Tommy GOODWIN, Director of Arkansas State Police, Appellee.

No. 86–2479.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1987.

Decided April 8, 1988.

Rehearing Denied May 18, 1988.

Howard L. Martin, Cabot, Ark., for appellant.

Theodore Holder, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before JOHN R. GIBSON and FAGG, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

William H. Wade appeals from the district court's[1] grant of Arkansas State Police Director Tommy Goodwin's motion for summary judgment based on Wade's failure to state a claim in his 42 U.S.C. § 1983 suit. We affirm.

In 1985 at the request of the governor of Arkansas, Goodwin compiled a list of persons identified as "survivalists."[2] This "list" was to be circulated to Arkansas state troopers for the purpose of identifying persons who possibly posed threats to law enforcement personnel on public highways. The resulting "survivalist list" included Wade's name. Subsequently, members of the news media filed a Freedom of Information request with the state police asking for a copy of the "survivalist list." Goodwin sought and received a legal opinion from the state's attorney general on the legality of releasing the information. After reviewing the attorney general's opinion and the Arkansas Freedom of Informa-

tion Act, Ark.Code Ann. § 25–19–101 et seq. (AFOIA), Goodwin released the requested information to the news media.[3] The list was subsequently published in several local and state newspapers.

Wade's complaint alleged that the compilation and publication by the Arkansas state police of the list containing his name deprived him of his constitutional rights. He asserted claims of slander, denial of due process and equal protection, invasion of privacy, and a chilling effect on the exercise of his first amendment rights of speech and association. Wade sought damages and injunctive relief. Goodwin moved for summary judgment asserting that Wade had failed to state a § 1983 claim as there had been no deprivation of constitutional rights. In the alternative, Goodwin argued that he was entitled to qualified immunity from suit in both his official and individual capacities.

The district court in granting summary judgment concluded that the gathering of the information for use by state troopers while in the field was permissible. The court stated that Wade had failed to allege or show any objective chill on his first amendment rights, and that the "list" was not released to the press voluntarily but pursuant to a Freedom of Information request based on Arkansas statutes. Further, the court ruled that Goodwin would be entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In order to survive a motion for summary judgment on his 42 U.S.C. § 1983 claim, Wade had to raise a genuine issue of material fact whether (1) Goodwin acted under color of state law, and (2) Goodwin's conduct deprived Wade of a constitutional or

---

1. The Honorable George Howard, Jr., United States District Judge, Eastern District of Arkansas.

2. The term "survivalist" was used by the state authorities to include members of the Ku Klux Klan; the Covenant, Sword and Arm of the Lord (C.S.A.); The Order; Aryan Nations; and the Posse Comitatus. It was believed that these groups advocated violence and that they posed a threat to law enforcement personnel.

3. The Arkansas attorney general evidently advised defendant that if the "survivalist list" was not the product of an ongoing investigation of suspected criminal activity, it could be released. *See* Ark.Code Ann. § 25–19–105(b)(6).

In light of the subsequent indictment of Wade for alleged implication in a plot to assassinate a United States District Judge and an agent of the Federal Bureau of Investigation, one may wonder about the extent of defendant's information as well as the legislative wisdom in phrasing exemptions to the AFOIA.

federal right. Fed.R.Civ.P. 56(c); *see Watertown Equipment Co. v. Norwest Bank Watertown,* 830 F.2d 1487, 1489 (8th Cir. 1987). While we accept the conclusion that Goodwin, in compiling and releasing the information, was acting under color of state law, we do not believe that these actions resulted in Wade being denied any constitutional rights.

■ Wade initially claimed that Goodwin had no right to compile the "survivalist list," and consequently that Goodwin had chilled Wade's first amendment rights to speech and association by including his name on the list. However, allegations that the existence of government investigatory information is a violation of first amendment rights will not constitute a § 1983 claim unless there is also an allegation of some specific injury resulting therefrom. *Laird v. Tatum,* 408 U.S. 1, 10–14, 92 S.Ct. 2318, 2324–26, 33 L.Ed.2d 154 (1972). A review of the record reveals that Wade has pleaded general harm to his reputation and that as a result of this harm he will be unable in the future to find employment or obtain credit. Alleging speculative apprehensiveness as to future misuse of information resulting in direct harm is a subjective claim and "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.* at 13–14, 92 S.Ct. at 2325–26. Consequently, we find that Wade has not sufficiently established a genuine issue of whether a first amendment injury resulted from the compilation of the list.

■ Wade claimed that his equal protection rights would be violated because he would be subjected to selective surveillance, arrest, or prosecution because his name was on the list. Without allegations of invidiously dissimilar treatment there is no basis for an equal protection claim. *Peck v. Hoff,* 660 F.2d 371, 373 (8th Cir. 1981) (per curiam). Wade failed to allege that he or a class to which he belongs actually received treatment from the state police which was invidiously dissimilar to that received by other persons. Thus, we also find Wade's equal protection claim deficient.

■ Wade next asserts that even if the compilation of the list was constitutionally permissible, the state's wrongful inclusion of his name on the publicized "survivalist list" had ruined his reputation and had consequently deprived him of property and liberty rights without due process of law. Wade's allegations, beyond general harm to reputation, were that "he will find it impossible to make a living or obtain loans or credit." These allegations do not state a § 1983 claim. One's reputation alone is neither a "liberty" nor a "property" interest protectible by the due process clause of the fourteenth amendment. *Paul v. Davis,* 424 U.S. 693, 701–10, 96 S.Ct. 1155, 1160–65, 47 L.Ed.2d 405 (1976) (injury to reputation resulting from the appearance of name and photograph on flyer captioned "active shoplifters" which was distributed by state police is not an injury protected by the due process clause). Wade's claims of injury to his ability to make a living and obtain loans and credit, even if true, do not implicate any action by the State of Arkansas beyond the general injury to his reputation. Any such injury could arise only through the acts of private individuals as a result of Wade's claimed reputational impairment.

However, a due process violation may exist if the complained of state action deprives the stigmatized party of a right previously held under state law. *American Family Life Assur. Co. v. Teasdale,* 733 F.2d 559, 565 (8th Cir.1984) (press release critical of cancer insurance did not deprive an insurance company of its state-created right to sell cancer policies), citing *Paul v. Davis,* 424 U.S. at 708, 96 S.Ct. at 1164; *see also Morton v. Becker,* 793 F.2d 185, 187–88 (8th Cir.1986). We believe that the injuries described by Wade are precisely the kinds of injuries which the Supreme Court believed were protected against by state tort law rather than by the due process clause of the fourteenth amendment. *Paul v. Davis,* 424 U.S. at 711–12, 96 S.Ct. at 1165–66. It may be that in some circumstances the ability to obtain employment is a protectible property interest. *See Morfeld v. Kehm,* 803 F.2d

1452, 1453–54 (8th Cir.1986). *Morfeld* depends on *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), for its general language that a right to employment is a protectible property interest. *Perry,* however, describes this future employment property interest as a right to employment which arises from rules, mutually explicit understandings, or implications from surrounding circumstances which would support a claim of job entitlement. *Id.* at 601–02, 92 S.Ct. at 2699–2700. Wade has made no such claims, nor could he, as the defendant is not his employer. Consequently, under the "change in legal status" test we described in *American Family Life Assur. Co.,* 733 F.2d at 565, we do not believe that Wade has stated a due process violation based on a deprivation of a state-created right.

■ Likewise Wade's claim that publication of the list was a violation of his privacy rights is legally insufficient to withstand attack by motion for summary judgment. The constitutional right to privacy is generally limited to only the most intimate aspects of human affairs. *McNally v. Pulitzer Publishing Co.,* 532 F.2d 69, 76–77 (8th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976); *see also Klein Independent School District v. Mattox,* 830 F.2d 576, 580 (5th Cir.1987). This is not to say that the Constitution does not protect rights of people to associate together and to advocate and promote legitimate, albeit controversial, political or social action. *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Pollard v. Roberts,* 283 F.Supp. 248 (E.D. Ark.), *aff'd,* 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968) (per curiam). But on balance freedom from publication by police of associations and lists has found little constitutional support in specific cases in the absence of very substantial restraint on first amendment rights. *See NAACP,* 357 U.S. at 462, 78 S.Ct. at 1171–72. Indeed, publication by the police of untrue criminal charges has been found not to be an invasion of privacy which rises to the level of a constitutional violation. *McNally,* 532 F.2d at 77 n. 9 (citing *Baker v. Howard,* 419 F.2d 376 (9th Cir.1969)).

Appellant's brief relates that Wade's family has been cited as "State Farm Family of the Year" and that he has been active in a veterans' association and has held prominent community positions. He denies that he has ever belonged to any of the so-called "survivalist" groups or ever been charged with a violent crime. Since on the record before us there is no showing that Wade is a "survivalist" or a person given to violence, we certainly reach no factual conclusion adverse to Wade. Nor do we here draw any adverse inference from the noted indictment of Wade. So far as the case at bar is concerned, Wade stands clothed with a presumption of innocence.

At argument Wade candidly conceded that it was highly doubtful, if not impossible, to prove any real damages as a result of the compilation or publication of the "list," and counsel stated that primarily Wade wanted a "name clearing" hearing. Wade evidently believes that a "good name is rather to be chosen than great riches, and loving favor rather than silver and gold." *Proverbs* Ch. 22, verse 1. Perhaps unfortunately, neither this court nor the district court has jurisdiction under § 1983 to give Wade a name-clearing hearing. At bottom, his complaint alleges, if any cause, a state tort action for defamation of character. Thus, we have no choice other than to deny relief here.[4]

From what has been said, it follows that, without prejudice to any state cause of action Wade may seek to pursue, the judgment of the district court now under attack should be, and it is, affirmed.

---

**4.** In view of the nature of our disposition of this case, it is unnecessary to pass upon appellee's claim of qualified immunity or upon appellant's motion for leave to enlarge the record on appeal.