# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  00-2850

_____

BETTYE S. GENTRY and
KATHERINE D. WHITLEY,          *
                                               *

         Plaintiffs/Appellants,     *

                                             *   Appeal from the United States
   v.                                  *   District Court for the
                                             *   Western District of Arkansas.

GEORGIA-PACIFIC CORPORATION, *

                                             *

         Defendant/Appellee.      *

                                             *

_____

Submitted:  April 9, 2001
Filed:  May 18, 2001

_____

Before HANSEN and BYE, Circuit Judges, and MELLOY,[1] District Judge.

_____

MELLOY, District Judge.


     Bettye Gentry and Katherine Whitley brought this diversity suit against Georgia-Pacific Corporation alleging they were discriminated against on the basis of gender in violation of the Arkansas Civil Rights Act of 1993 ("ACRA"), Ark. Code Ann. § 16-

_____

    [1]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa, sitting by designation.

123-107(c) et seq. The district court[2] granted partial summary judgment to the defendant and the plaintiffs appeal.[3] We affirm.

I.

Bettye Gentry and Katherine Whitley are hourly employees in the shipping department of Georgia-Pacific's paper mill in Ashdown, Arkansas. Gentry began working at the mill in 1980 and is currently employed as a finished goods material handler. Whitley began working at the mill in 1991 and is currently employed as a material handler.

In August 1995, Georgia-Pacific posted a notice advertising a vacancy for a permanent shift supervisor position in the shipping department. Both Gentry and Whitley applied and, along with other candidates, underwent a structured interview process in which each candidate was asked the same questions by a mixed-gender interview panel. Each member of the panel scored each candidate based on his or her responses. The interviewers then compared scores and came to a consensus for each question. The candidates were ranked based on the consensus totals. The panel then forwarded its recommendation of the highest ranked candidate to Georgia-Pacific's shipping superintendent, Syd Clark, who was responsible for the operation of the shipping department. Clark reported to Wallace Lynn Jones ("Lynn Jones"). Following the panel's recommendation, and with approval from Lynn Jones, Clark awarded the position to Tony Jones in December 1995.

---

[2] The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

[3] Following the district court's grant of partial summary judgment, the plaintiffs dismissed their remaining claims.

Georgia-Pacific contends that it posted another notice advertising vacant shift supervisor positions in February 1996. Unlike the previous posting, this one did not include a "bid sheet" on which employees could register their interest. Rather, the posting stated that interested employees were to fill out an internal applicant form in human resources. The selection process itself also differed from August 1995. To be considered, an applicant was required to complete a Test of Adult Basic Education as well as participate in a structured interview involving standardized questions and a creative expression exercise. If an applicant successfully completed these preliminary requirements, he or she then participated in a workshop with other applicants, after which a final selection was made.

Gentry did not go through the selection process in connection with the February 1996 posting. She has no recollection of ever seeing the February posting or filling out an application for the position. She never received a memo allegedly routed to all employees having expressed an interest in the position although her name is listed among the recipients. She was aware of the selection process as it was taking place in spring 1996 but never asked Clark or anyone else in management why she was not being included in the process.

Whitley did fill out an internal application form in February 1996, and in spring 1996 she completed the preliminary requirements and participated in the workshop. From this process, the panel recommended three male candidates as "ready for promotion" to shift supervisor: Russell Latson, Wayne Gierke, and Mike Kelly. In May, 1996, Clark promoted Latson to one of the positions.[4]

---

[4] An action brought under the ACRA must be filed within one year of the alleged discriminatory act. Ark. Code § 16-123-107(c)(3). The present complaint was filed on March 3, 1998. Thus, Gentry and Whitley's claims with respect to Georgia-Pacific's decision to promote Tony Jones in 1995, and Russell Latson in

In late 1996 and early 1997, both Tony Jones and Latson resigned their positions as shipping supervisors. To fill these vacancies, Georgia-Pacific decided to promote from the spring 1996 recommendations instead of instituting a new process. Kelly and Gierke were offered the open positions.

In April 1998, another shift supervisor position was advertised. Both Gentry and Whitley applied and went through the selection process, which again included a structured interview before a mixed-gender panel. Donald Thompson received the highest interview score. He was recommended by the panel and was subsequently promoted to shipping supervisor in June 1998. Among those involved in the decision-making process for this position was Malinda Winton, hired by Clark and Lynn Jones in May 1997 as assistant superintendent of the shipping department. Winton works directly under Clark and directly over the shift supervisors.

Gentry and Whitley filed a complaint against Georgia-Pacific alleging that Georgia-Pacific failed to promote them to the permanent shift supervisor positions on the basis of their gender in violation of the ACRA. In a memorandum and order filed on May 12, 2000, the district court granted Georgia-Pacific's motion for summary judgment. With respect to Whitley's claim, the district court assumed that she had established a prima facie case of gender discrimination as to both the 1996 and 1998 process but found that she had failed to submit sufficient evidence to overcome

---

May, 1996, were properly deemed time-barred. See Gipson v. KAS Snacktime Co., 83 F.3d 225, 229 (8th Cir. 1996) ("[A] discrete, adverse employment action, such as . . . [a] failure to promote, 'constitutes a completed act at the time it occurred.'") (quoting Boge v. Ringland-Johnson-Crowley Co., 976 F.2d 448, 451 (8th Cir. 1992)). The 1995 job posting and selection process is included only as background to the present dispute. The February 1996 posting and selection process remains relevant, however, as Georgia-Pacific purportedly relied upon the results of that process in making its 1997 promotions which are not time-barred.

Georgia-Pacific's claim that a neutral selection panel had recommended others for the promotions based on more favorable evaluations. With respect to Gentry's claim, the district court first concluded that Gentry had failed to apply for the 1996 selection process. As to the 1998 vacancy, for which Gentry did formally apply, the court held that, like Whitley, Gentry had failed to submit sufficient evidence to rebut Georgia-Pacific's claim that the position was awarded to the applicant who received the highest evaluation. Gentry and Whitley's motion to reconsider was denied.

II.

We review a district court's grant of summary judgment de novo, giving the nonmoving party the most favorable reading of the record as well as the benefit of any reasonable inferences that arise from the record. Britton v. City of Poplar Bluff, 2001 WL 303895, *1 (8th Cir. 2001); Bogren v. Minnesota, 236 F.3d 399, 403 (8th Cir. 2000). Summary judgment "is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000) (citing Chock v. Northwest Airlines, Inc., 113 F.3d 861, 865 (8th Cir. 1997)).

As the district court recognized, the plaintiffs' failure-to-promote claims are analyzed under the familiar McDonnell Douglas burden-shifting framework. See Roark v. City of Hazen, 189 F.3d 758, 761 (8th Cir. 1999) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); Flentje v. First Nat'l Bank of Wynne, 11 S.W.3d 531, 536-38 (Ark. 2000) (applying burden-shifting analysis to ACRA claim and noting that "Arkansas's statute specifically provides that courts may look to state and federal decisions interpreting the federal civil rights laws for persuasive authority"). Under this framework, a plaintiff may establish a prima facie case of discrimination in a failure-to-promote case by showing that: (1) she is a member of a protected group; (2) she was

qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead. Shannon v. Ford Motor Co., 72 F.3d 678, 682 (8th Cir. 1996) (citation omitted). "If a plaintiff establishes her prima facie case, the burden of production shifts to the employer, who must rebut the presumption of discrimination with evidence 'that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" Id. (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). The burden then reverts to the plaintiff to point to evidence which, if believed, would expose the employer's reason as a mere pretext for intentional discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000) (citing Burdine, 450 U.S. at 253, and St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507-508 (1993)); O'Sullivan v. Minnesota, 191 F.3d 965, 969 (8th Cir. 1999). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253, quoted in Reeves, 120 S. Ct. at 2106.


## A. Whitley's Gender Discrimination Claim


The district court assumed, as we do on appeal, that Whitley set forth sufficient evidence to support a prima facie case of discriminatory failure-to-promote as to both the 1996 and 1998 selection process. The court concluded, however, that Whitley failed to establish a genuine issue that Georgia-Pacific's proffered reason for failing to promote her was a pretext for gender discrimination. After a thorough review of the record, we agree with the district court that Whitley has not demonstrated that Georgia-Pacific's explanation that other candidates were evaluated more favorably by a neutral, gender-mixed panel was pretext for gender discrimination.


Whitley's pretext argument centers on the role of the selection panel in

recommending promotion-ready employees.  Her evidence of pretext rests solely on inferences to be gleaned from the following: (1) the alteration of her interview score from an "85" to a "77" in the 1996 selection process; (2) two affidavits from Georgia-Pacific employees, Pat Thrush and Russell Latson, which arguably suggest bias in the selection process; and (3) the fact that Georgia-Pacific has never promoted a female production worker within the shipping department to a shift supervisor position.

As to the 1996 selection process, we find meritless Whitley's argument that she is entitled to an adverse inference based on the fact that her interview score was initially marked as "85."  The accompanying composite sheets clearly indicate the interviewers' individual scores, which, when averaged, total to "77."  Absent any evidence to the contrary the only reasonable inference is that the "85" was merely a computational error.  As to the ultimate ranking of the candidates, it is uncontested that the spring 1996 selection process had multiple components, of which the interview was only one part.  The ten interview questions did not cover work history or other relevant background but rather were predominantly phrased as hypotheticals designed to determine how a candidate would address situations frequently faced by a shift supervisor.  Each candidate also participated in a "12-squares" exercise designed to evaluate the candidate's ability to think creatively and communicate effectively as well as a workshop exercise to evaluate group problem-solving skills.  In light of the limited nature of the interview questioning and the multi-component selection process, a candidate's score on the interview portion could not reasonably be deemed conclusive of the candidate's ultimate ranking by the panel.  See Chock, 113 F.3d at 863-865 (affirming grant of summary judgment to employer for insufficiency of pretext evidence where selection panel made recommendations based on similar multi-component evaluation).  In this regard, we additionally note that a male candidate who, like Whitley, received a score of "77" in the interview portion was also passed over by the panel when making its promotion recommendations.

-7-

We similarly find no evidence of discrimination inherent in the 1998 selection process. Malinda Winton, part of the 1998 interview panel that made the ultimate recommendation to Lynn Jones, explained that Donald Thompson's high interview score and extensive supervisory experience in the armed services was the basis of the panel's decision to recommend him. Whitley has proffered no evidence to suggest that the panel's recommendation was based on anything other than neutral criteria. See Hanebrink v. Brown Shoe Co., 110 F.3d 644, 646 (8th Cir. 1997) ("This court . . . may not second-guess an employer's personnel decisions, and we emphasize that 'employers are free to make their own business decisions . . . so long as they do not discriminate unlawfully.'") (quoting Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1317 (8th Cir. 1996)).

We next address the affidavits of Pat Thrash and Russell Latson which allegedly demonstrate that promotion selections were not based on impartial panel recommendations. Thrash was a supervisor in Georgia-Pacific's transportation department. Latson, as noted earlier, had been promoted to a permanent supervisor position in 1996 but later resigned. In Thrash's affidavit, she avers that she once asked Clark why the shipping supervisor positions were being filled through the interview panel process. In response, Clark "advised [her] that he did this because 'that is the surest way of getting who I want and they cannot come back on me.'" In Latson's affidavit, he avers that at some point after May 1999, "Clark told [him] that if [he] would merely sign up for the position of shipping supervisor [he] would get the job." Although Latson cannot recall the exact words used by Clark, "it was clear to [him] that [Clark] was telling [him] he would get the job if [he] applied." At the time this statement was allegedly made in 1999, no position had been advertised and no interview panels convened for the purpose of selecting shift supervisors. Whitley asks us to infer from these statements that the panel was not impartial, that Clark controlled the panel, and/or that the panel's recommendations did not drive the selection process. Whitley asserts that this conclusion is bolstered by the fact that Georgia-Pacific has

never promoted a female production worker to a shift supervisor position in the shipping department.

Viewing this evidence in the light most favorable to Whitley, we find it merely colorable at best and not significantly probative of gender discrimination within the selection process. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995). The alleged statements certainly do not mandate the interpretation advocated by Whitley. And even were we to adopt Whitley's interpretation, the statements do not even colorably suggest that gender considerations played a role in the selection process. Further, there is no evidence in the record that Clark ever attempted to influence the panel's decision-making process. Absent that, ambiguous statements such as these are insufficient to raise a genuine issue of material fact as to the legitimacy of the selection process. The fact that Georgia-Pacific has not promoted a female production worker to a shift supervisor position does not change our conclusion. It is undisputed that women occupy management positions at Georgia-Pacific and, further, that since 1997 Malinda Winton has been a supervisor in the shipping department. We find no relevant significance in the fact that Winton moved laterally into the shipping department from another department rather than from the production floor.

In sum, Whitley has failed to adduce sufficient evidence of pretext, and has offered no evidence from which a jury could reasonably infer that gender considerations motivated Georgia-Pacific's actions in selecting other, more favorably evaluated candidates over her for shift supervisor positions. See Anderson, 477 U.S. at 251 ("[I]n every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.") (quoting Pleasants v. Fant, 22 Wall. 116, 120-21 (1875)). We agree with the district court's conclusion that in this case summary

judgment was proper.

## B. Gentry's Gender Discrimination Claim

Gentry also challenges both the 1996 and 1998 selection process. She first argues that the district court erred in concluding that she had not established a prima facie case of sex discrimination with regard to the 1996 selection process because she failed to raise a genuine issue that she had applied for those positions. We have held that formal application for a job opening will not be required to establish a prima facie case of discrimination "if the job opening was not officially posted or advertised and either (1) the plaintiff had no knowledge of the job from other sources until it was filled, or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application." Chambers v. Wynne School Dist., 909 F.2d 1214, 1217 (8th Cir. 1990) (citation omitted).

Although we find Gentry has raised a genuine issue as to whether the February 1996 notice was officially posted or advertised,[5] her prima facie case still fails. In her testimony Gentry admitted she was aware that a selection process was being conducted during March and April 1996 and that she apparently was not included in that process. Because she never saw the February 1996 posting, Gentry assumed that the spring 1996 applicant pool had been culled from the August 1995 bid process. Accordingly,

_____

[5] To this effect, we note that Gentry denies ever seeing the posting despite her adamance that she applied for (or intended to apply for) every shift supervisor position that had been posted from 1995 onward. Whitley also testified that she had only seen two postings, one in August 1995 and one in 1998, and there is no other conclusive evidence in the record substantiating the posting. As to the memo, Gentry denies having received it and on the record before us we shall charge this deficiency in the notice process against Georgia-Pacific.

she deemed her exclusion from the spring 1996 selection process an affirmative representation by Georgia-Pacific that she would not be considered for a shipping supervisor position and never raised the issue with Clark or other Georgia-Pacific management.

Where, as here, there is no evidence that inquiry would have been futile, Gentry's erroneous assumptions do not excuse her failure to inquire as to the openings. See id. at 1217 (where plaintiff admitted that she was aware from faculty meetings that school district would be hiring additional counselors, that knowledge "put her on reasonable notice to at least engage in further inquiry with administrators concerning the openings"). Further, Gentry's single prior application for a shift supervisor position in August 1995 did not sufficiently put Georgia-Pacific on notice as to her interest in all future openings so as to waive the formal application requirement of her prima facie case. In sum, we find nothing in the record to suggest that Gentry's exclusion from the February 1996 selection process rests on anything more than her failure to properly apply for consideration and the district court did not err in granting summary judgment to Georgia-Pacific on that issue.

With regard to the 1998 selection process, for which she did formally apply, Gentry heavily relies upon the same evidence proffered by Whitley which we found insufficient to create a triable issue as to gender discrimination. Because Gentry has advanced no additional evidence to support an inference that, with regard to her, the selection process was anything but fair and impartial, the district court properly granted summary judgment to Georgia-Pacific on that issue.

III.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.