# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3133

_____

| | | |
|---|---|---|
| Donald G. Cooksey, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| John L. Boyer, individually and | * | |
| in his former, official capacity as | * | |
| Mayor of the City of Potosi, | * | |
| Missouri; City of Potosi, Missouri, | * | |
| by and through the following City | * | |
| officers: Doris Eye, City Clerk, | * | |
| City Clerk; Wayne Malugen, | * | |
| Alderman and Acting Mayor; David | * | |
| Sansegraw, Alderman; John Boyer, | * | |
| Alderman; and Harry "Bud" Forbes, | * | |
| Alderman, | * | |
| | * | |
| Appellees. | * | |
| | * | |

_____

Submitted: April 16, 2002
Filed: May 7, 2002

_____

Before BOWMAN, RILEY and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Appellant Donald G. Cooksey appeals the district court's[1] adverse grant of summary judgment on his substantive due process claim. Because we find no constitutional violation occurred, we affirm.

I.

In 1990, Donald G. Cooksey was appointed chief of police of Potosi, Missouri, a town of approximately 3000 residents. As chief of police, Cooksey supervised a small police force and administrative staff. He reported to the police commissioner, the Board of Aldermen and the mayor. In April 1998, John L. Boyer was elected mayor. For reasons not fully clear from the record, Boyer harbored significant animosity toward Cooksey and, in fact, his campaign platform included a promise to reorganize the police department and replace Cooksey.

In the spring of 1998, Cooksey sought treatment for stress. On June 10, 1998, in accordance with City policies, Cooksey submitted a statement from his psychologist explaining his need for excused leave: "Donald Cooksey is under my care and should not return to work until further notice. I have seen him since April (1998) and currently recommend he dramatically reduce his stress, including sick leave from work. Sincerely, Georgia Bensen, Ph.D." On June 25, 1998, Cooksey submitted another note from Dr. Bensen stating he would soon be able to return to work. The note read, in full: "This is to approve Donald Cooksey's return to full-duty effective July 6, 1998. He will remain in my care, however, in light of the stress associated with his job." Cooksey returned to work on July 6.

---

[1] The Honorable Stephen J. Limbaugh, United States District Judge for the Eastern District of Missouri.

-2-

At a regularly scheduled meeting of Potosi's Board of Aldermen, on July 13, 1998, then-Mayor Boyer disclosed in open session that Cooksey was undergoing treatment for stress by a psychologist. A discussion ensued which resulted in an agreement that Cooksey would need to provide a physician's report confirming his fitness for duty. The transcript of the meeting demonstrates that no further information regarding Cooksey's health was known, or disclosed, by Boyer or the Board members. At the next Board meeting, Cooksey's status was again briefly discussed when a Board member questioned the wording of the Board's letter to Cooksey with regard to the requested fitness for duty report. The topic of Cooksey's health was discussed at one other meeting, on August 10, 1998. The minutes from that meeting provide: "Alderman David Sansegraw transmitted to the Mayor on August 5, 1998, a fitness for duty report submitted July 28, 1998. The report stated Don Cooksey is fully able, mentally and physically, to return to work, signed by Dr. Becky Beremer, D.O."

In February 1999, the mayor sent Cooksey a letter informing him that he was terminated. It was ultimately determined that the mayor's action had not been approved by the Board and Cooksey was reinstated to his position as chief of police on March 29, 1999. On April 8, 1999, the Board impeached Boyer. The impeachment was based, in part, on his treatment of Cooksey. Cooksey remained in his position until January 2000, at which point he resigned, citing his inability to work in a town where his reputation had been maligned and his mental fitness continued to be questioned.

II.

We review a district court's grant of summary judgment de novo, giving the nonmoving party the most favorable reading of the record. Gentry v. Georgia-Pacific

Corp., 250 F.3d 646, 649 (8th Cir. 2001) (citations omitted). "Summary judgment 'is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim.'" Id. at 649-50 (quoting Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000) (citing Chock v. Northwest Airlines, Inc., 113 F.3d 861, 865 (8th Cir. 1997))). In order to survive a motion for summary judgment under § 1983, the plaintiff must raise a genuine issue of material fact as to whether (1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. Naucke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002) (citing Wade v. Goodwin, 843 F.2d 1150, 1151-52 (8th Cir. 1988)).

Cooksey's § 1983 action posits that Boyer's disclosure and the Board members' subsequent discussion of his mental health treatment violated his constitutional right to privacy under the Fourteenth Amendment. It is established that "notions of substantive due process contained within the Fourteenth Amendment safeguard individuals from unwarranted governmental intrusions into their personal lives." Eagle v. Morgan, 88 F.3d 620, 625 (8th Cir. 1996) (citing Whalen v. Roe, 429 U.S. 589, 598 n.23 (1977)). This safeguard includes protection of the "'individual interest in avoiding disclosure of personal matters,'" id. (quoting Whalen, 429 U.S. at 599-600), and has been characterized as "the right to confidentiality." Id. Not every disclosure of personal information will implicate the constitutional right to privacy, however, and the Supreme Court has cautioned against unwarranted expansion of the right: "[T]he personal rights found in [the] guarantee of personal privacy must be limited to those which are 'fundamental' or 'implicit within the concept of ordered liberty' . . . ." Paul v. Davis, 424 U.S. 693, 713 (1976) (citing Palko v. Connecticut, 302 U.S. 319, 325 (1937)), quoted in Alexander v. Peffer, 993 F.2d 1348, 1350 (8th Cir. 1993). "[T]he Due Process Clause 'does not purport to supplant traditional tort law in laying down rules of conduct to regulate liabilities for injuries that attend living together in society . . . .'" Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992)

-4-

(quoting <u>Daniels v. Williams</u>, 474 U.S. 327, 332 (1986)), <u>quoted in</u> <u>Alexander</u>, 993 F.2d at 1350. <u>See also</u> <u>Eagle</u>, 88 F.3d at 627 ("We must constantly remain aware, however, that the Constitution does not provide a remedy for every wrong that occurs in society.").

In accordance with these principles, we have consistently held that to violate the constitutional right of privacy "the information disclosed must be either a shocking degradation or an egregious humiliation . . . to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." <u>Alexander</u>, 993 F.2d at 1350 (citation omitted). <u>See also</u> <u>Riley v. St. Louis County</u>, 153 F.3d 627, 631 (8th Cir. 1998) (applying <u>Alexander</u> standard); <u>Eagle</u>, 88 F.3d at 625 (same). <u>But see</u> <u>Sheets v. Salt Lake County</u>, 45 F.3d 1383, 1388 (10th Cir. 1995) (finding potential constitutional violation in disclosure of diary contents even where the "information is not extremely sensitive in nature [nor] particularly controversial or embarrassing"). A determination of whether a particular disclosure meets this exacting standard may include consideration of whether the person had a legitimate expectation that the information would remain confidential while in the state's possession. <u>Eagle</u>, 88 F.3d at 625 (citations omitted).

Applying these standards to the case at bar, we agree with the district court that no constitutional violation occurred. The legitimate interest in ensuring Cooksey's fitness for duty could certainly have been handled more professionally.[2] However, the information disclosed and the circumstances of disclosure are neither shockingly degrading or egregiously humiliating. Cooksey was a high ranking law enforcement officer in a politically charged, small town. The only information disclosed was the

---

[2] Under Missouri law, the Board could have adjourned to closed session for discussion of Cooksey's status. <u>See</u> Mo. Ann. Stat. § 610.021(3) (2002) (authorizing city councils to go into closed session to discuss personnel matters involving city employees).

fact that he was being treated by a psychologist for stress. Because the field of law enforcement is generally recognized as inherently stressful, it follows that the decision to seek treatment for that stress cannot be characterized as egregiously humiliating. Further, in this case, the Board's reinstatement of Cooksey as chief of police is strong evidence against Cooksey's assertion that he was stigmatized by the disclosure.

The standards elucidated in <u>Alexander</u> and <u>Eagle</u> set a high bar and implicitly hold that many disclosures, regardless of their nature, will not reach the level of a constitutional violation. Thus, we find no merit in appellant's speculation that affirming the district court will sanction wholesale disclosure of medical information. Our holding is limited to the facts of this case and we certainly do not imply that unauthorized publication of any and all information relating to an individual's mental health is constitutionally permitted. We merely recognize that all mental health information is not created equal and should not be treated categorically under a privacy rights analysis. In this instance, the disclosure of Cooksey's treatment for stress does not meet the exacting standard mandated by our case law.

### III.

For the reasons discussed above, we affirm the order of the district court granting the appellees' motion for summary judgment on Cooksey's § 1983 claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.