**Francisco NUNEZ, Appellant**

v.

**Martin R. PACHMAN; the City of Union City; Mayor Brian P. Stack, individually and in his official capacity; John Doe (1–12), being fictitious person male or female.**

**No. 08–3314.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 13, 2009.

Filed: Aug. 26, 2009.

---

Tomas Espinosa, Esq. Union City, NJ, for Plaintiff–Appellant.

Juan C. Fernandez, Esq. O'Toole Fernandez Weiner Van Lieu, Verone, NJ, for Defendants–Appellees, City of Union and Brian P. Stack.

Robert M. Schwartz, Esq., Monroe Township, NJ, for Defendant–Appellee, Martin R. Pachman.

Before RENDELL, FUENTES and ROTH, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

This appeal from the District Court's grant of summary judgment in favor of defendants, and against plaintiff Francisco Nunez, requires us to decide whether disclosure of an expunged criminal record violates the right of privacy afforded by the Due Process Clause of the U.S. Constitution. Relying on a footnote in our opinion in *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 117 n. 8 (3d Cir.1987), the District Court concluded that no cognizable privacy interest lies in an expunged criminal record, which may linger in police blotters, court dockets, and other publicly available records. On appeal, Nunez urges that New Jersey law mandates removal of an expunged record from all public documents and thus creates a reasonable expectation of privacy in this information. We conclude, however, that because expungement is available only after a minimum statutory period of ten years has elapsed, and because references to a defendant's criminal conduct may persist in public news sources after expungement, the information expunged is never truly "private." Even if the state recognizes a privacy interest in an expunged criminal record, we hold that such an interest is not cognizable under the *federal* constitution. Accordingly, we will affirm the District Court's grant of summary judgment.

Nunez's core contention is that defendants accessed and disclosed his criminal records, in violation of an expungement order and N.J.S.A. 2C:51–2(a), which restricts access to, and disclosure of, expunged materials. In 2005, Nunez, an employee of the City of Union City ("City"), filed a grievance against the City, alleging improper denial of a vacation request. Representing the City in arbitration proceedings related to the grievance, Defendant Martin R. Pachman learned in the course of interviews with City employees that Nunez had pled guilty to a gun offense several years earlier. Because a weapons conviction would likely preclude Nunez from prosecuting his grievance complaint, Pachman sought to verify the information by obtaining Nunez's criminal

records from the City police department.[1] At the ensuing arbitration proceeding, Pachman also "disclosed" the records by cross-examining Nunez about the weapons conviction to impeach his credibility.

Nunez subsequently filed suit under 42 U.S.C. § 1983 against Pachman, the City, and the Mayor, who he alleges was essentially targeting him because Nunez did not support him politically. Nunez contends that the disclosure of his weapons conviction, in violation of the prior expungement order, violated his right of privacy under the United States and New Jersey Constitutions. Rejecting Nunez's claim, the District Court concluded that "an arrest record, even one that is expunged, warrants no privacy protection under the Constitution." A. 12.[2] After granting judgment in favor of defendants on Nunez's privacy claim—the sole federal law violation alleged[3]—the Court dismissed Nunez's remaining claims, all of which arose under New Jersey state law, for lack of subject matter jurisdiction under 28 U.S.C. § 1367(c)(3). Our review of the District Court's grant of summary judgment is plenary. *AT & T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 530 (3d Cir.2006), *cert. denied*, 551 U.S. 1103, 127 S.Ct. 2913, 168 L.Ed.2d 243 (2007). Summary judgment is appropriate only if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. *Id.*

Initially, Nunez contends that disclosure of his weapons conviction violated his right of privacy under the Due Process Clause of the Fourteenth Amendment. Relying on our decision in *Fraternal Order of Police*, the District Court rejected any privacy interest in an expunged criminal record. In *Fraternal Order of Police*, we concluded in a footnote that the possibility of expungement of arrest records did not provide these records with privacy protection: "The ACLU suggests that arrest records are entitled to privacy protection because the record of an arrest may be expunged if there has been no disposition.... However, these [expungement] provisions cannot be viewed as removing arrest information from the public record *since it remains on police blotters and court dockets.*" 812 F.2d at 117 n. 8 (emphasis added). On appeal, Nunez attempts to distinguish the Pennsylvania expungement statute analyzed in *Fraternal Order of Police* from its New Jersey counterpart, which mandates expungement of a criminal record from *all* public documents, including police blotters and court dockets. *Compare* N.J.S.A. 2C:52–1 *with* 18 Pa.C.S. §§ 9122(e) and 9104(a).[4] Accordingly, Nunez maintains

---

1. It appears that Pachman received confirmation of this information from the police department but did not actually seek the records from the department or from any other city agency or office.

2. The District Court properly exercised jurisdiction over Nunez's § 1983 claim under 28 U.S.C. § 1331, and over his state law claims under 28 U.S.C. § 1367(a). Our jurisdiction is proper under 28 U.S.C. § 1291.

3. Nunez also maintains that his claim under the First Amendment of the U.S. Constitution was improperly dismissed by the District Court under Fed.R.Civ.P. 12(b)(6). Because Nunez's amended complaint does not mention, much less plead facts supporting, a First Amendment violation, dismissal of this claim was proper.

4. The New Jersey expungement statute provides in pertinent part:

   a. Except as otherwise provided in this chapter, expungement shall mean the extraction and isolation of all records on file within any court, detention or correctional facility, law enforcement or criminal justice agency concerning a person's detection, apprehension, arrest, detention, trial or disposition of an offense within the criminal justice system.
   b. Expunged records shall include complaints, warrants, arrests, commitments, processing records, fingerprints, photo-

that the District Court's reliance on *Fraternal Order of Police* is misplaced.

Notwithstanding distinctions between the New Jersey and Pennsylvania statutes identified by Nunez, we reject his constitutional theory on two grounds. First, prior to expungement, a criminal record is publicly available for a minimum period of ten years under New Jersey law. N.J.S.A. 2C:52–2(a).[5] News accounts of a defendant's criminal acts, moreover, may persist after obliteration of formal records.[6] Accordingly, this information is never truly private.

Second, even if we accept Nunez's assertions that the expungement statute accomplishes a complete removal of a criminal record from the public domain, and that New Jersey law thus creates a reasonable expectation of privacy in this information, Nunez fails to state a claim under the *federal* constitution,[7] which protects

---

graphs, index cards, "rap sheets" and judicial docket records.
N.J.S.A. 2C:52–1.

The Pennsylvania expungement statute, by contrast, expressly retains references to a defendant's criminal record in police blotters, court dockets, and certain other public documents. The statute provides that, "Public records listed in section 9104(a) (relating to scope) shall not be expunged." 18 Pa.C.S.A. § 9122(e). Section 9104(a) exempts the following public records from expungement:

(a) **General rule.**—[N]othing in this chapter shall be construed to apply to:

(1) Original records of entry compiled chronologically, including, but not limited to, police blotters and press releases that contain criminal history record information and are disseminated contemporaneous with the incident.

(2) Any documents, records or indices prepared or maintained by or filed in any court of this Commonwealth, including but not limited to the minor judiciary.

(3) Posters, announcements, or lists for identifying or apprehending fugitives or wanted persons.

(4) Announcements of executive clemency.
18 Pa.C.S. §§ 9104(a).

5. As the Eighth Circuit reasoned in *Eagle v. Morgan*,

Just as the judiciary cannot "suppress, edit, or censor events which transpire in proceedings before it," neither does the legislature possess the Orwellian power to permanently erase from the public record those affairs that take place in open court.... [N]o governmental body holds the power to nullify the historical fact that in 1987 Eagle pleaded guilty to a felony. Thus, notwithstanding the subsequent expungement order, the officers' divulgence of this public

information does not implicate the constitutional right to privacy.
88 F.3d 620, 626–27 (8th Cir.1996) (internal citation omitted); *see also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 494–95, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) ("[T]he interests in privacy fade when the information involved already appears on the public record."); *Does v. Munoz*, 507 F.3d 961, 965 (6th Cir.2007) ("Where the information disclosed is already public, there is no valid expectation of privacy because privacy interests diminish when the material involved is publicly available.") (internal citation omitted); *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 207 (3d Cir. 1991).

6. *See Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir.1995) ("An expungement order does not privatize criminal activity. While it removes a particular arrest and/or conviction from an individual's criminal record, the underlying object of expungement remains public.... An expunged arrest and/or conviction is never truly removed from the public record and thus is not entitled to privacy protection.").

7. The Supreme Court has recognized that notions of substantive due process contained within the Fourteenth Amendment safeguard individuals from unwarranted governmental intrusions into their personal lives. *Eagle*, 88 F.3d at 625; *see Whalen v. Roe*, 429 U.S. 589, 598 n. 23, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). This right to privacy actually encompasses two distinct interests. *Whalen*, 429 U.S. at 598–99, 97 S.Ct. 869. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id.* at 599–600, 97 S.Ct. 869 (footnote omitted). Solely the former concern—the right to confidentiality—is at issue here.

against public disclosure only "highly personal matters" representing "the most intimate aspects of human affairs." *Eagle*, 88 F.3d at 625 (quoting *Wade v. Goodwin*, 843 F.2d 1150, 1153 (8th Cir.1988)).[8] Indeed, the constitutional right of privacy, which courts have been "reluctant to expand," *id.*, shields from public scrutiny only that information which involves "deeply rooted notions of fundamental personal interests derived from the Constitution." *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir.1986) (citing *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 228–30, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)).[9] In this respect, the federal right of privacy is significantly narrower than the right of privacy protected by state tort law.[10]

Here, Nunez does not dispute the established precept that criminal records, including police reports, indictments, guilty verdicts, and guilty pleas, are inherently public—not private—documents and are thus beyond the purview of the Due Process Clause.[11] Nor does Nunez maintain that an "expunged" record possesses inherent attributes warranting special constitutional treatment. There is no argument, for example, that because expungement is available solely to first-time offenders,[12] an expunged record is somehow of lesser public consequence, or implicates more sensitive subject matter, than a criminal record ineligible for expungement. A right of privacy in the former is not supported by, much less "deeply rooted" in, the customs and traditions of this nation.[13] To the contrary, the his-

---

**8.** *See, e.g., Nilson*, 45 F.3d at 372 ("Expectations of privacy are legitimate if the information which the state possesses is highly personal or intimate."); *Alexander v. Peffer*, 993 F.2d 1348, 1350 (8th Cir.1993) ("[T]o violate [a person's] constitutional right of privacy the information disclosed must be either a *shocking degradation* or an *egregious humiliation* of her to further some specific state interest, or a flagrant breech [sic] of a pledge of confidentiality which was instrumental in obtaining the personal information.") (emphasis added); *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963) ("We cannot conceive of a more basic subject of privacy than the naked body.").

**9.** *See also Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (noting that "the personal rights found in [the] guarantee of personal privacy must be limited to those which are 'fundamental' or 'implicit in the concept of ordered liberty' ") (internal citation omitted).

**10.** *See Cooksey v. Boyer*, 289 F.3d 513, 515–16 (8th Cir.2002) (noting that "[n]ot every disclosure of personal information will implicate the constitutional right to privacy"); *Eagle*, 88 F.3d at 627 ("We must constantly remain aware, however, that the Constitution does not provide a remedy for every wrong that occurs in society."); *McNally v. Pulitzer Pub. Co.*, 532 F.2d 69, 76 (1976) ("The constitutional right of privacy is not to be equated with the common law right recognized by

state tort law. Thus far only the most intimate phases of personal life have been held to be constitutionally protected.").

**11.** *See, e.g., Paul P. v. Verniero*, 170 F.3d 396, 403–404 (3d Cir.1999) ("[W]e cannot simply disregard the language of the Supreme Court rejecting any privacy interest in information, such as arrests, which is the subject of official records."); *Scheetz*, 946 F.2d at 206 (noting that police reports are public documents and thus not entitled to constitutional protection); *Fraternal Order of Police*, 812 F.2d at 117 & n. 8 (noting that arrest records are public and thus not entitled to privacy protection); *Trade Waste Mgmt. Ass'n, Inc. v. Hughey*, 780 F.2d 221, 234 (3d Cir.1985) (holding that records of criminal convictions and pending criminal charges "are by definition public" and therefore not protected).

**12.** Under N.J.S.A. 2C:52–2(a), a defendant who commits no more than two disorderly or petty offenses may also obtain expungement of his criminal record in certain circumstances.

**13.** *See Mangels*, 789 F.2d at 839. In *Paul v. Davis*, the Supreme Court stated,

> He [plaintiff] claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based, not upon any challenge to the State's

toric right of public access to criminal records applies in equal measure to the first-time offender and the career criminal. *See also Nilson*, 45 F.3d at 372 ("[A] validly enacted law places citizens on notice that violations thereof do not fall within the realm of privacy. Criminal activity is thus not protected by the right to privacy.") (internal citation omitted). In short, no attributes inhere in an expunged record entitling it to special constitutional protection.

Nunez, nonetheless, insists that the New Jersey expungement statute "hardens the right to privacy into a constitutional right." Appellant's Br. at 2. New Jersey law, however, is not determinative of the scope of the *constitutional* right of privacy. A decision of the Tenth Circuit Court of Appeals, rejecting an identical argument, is persuasive:

> Mr. Nilson argues that the Utah expungement statute created the legitimate expectation of privacy, and that Sergeant Brimhall's violation of the statute consequently implicated his privacy

rights. We disagree. Substantive due process rights are founded not upon state law but upon "deeply rooted notions of fundamental personal interests derived from the Constitution." While state statutes and regulations may inform our judgement regarding the scope of constitutional rights, they "fall far short of the kind of proof necessary" to establish a reasonable expectation of privacy. Mere allegations that an official failed to abide by state law will not suffice to state a constitutional claim. The disclosed information itself must warrant constitutional protection. We have already concluded that Mr. Nilson's criminal history, despite the expungement order, is not protected by the constitutional right to privacy. It is therefore irrelevant to our inquiry whether Sergeant Brimhall violated the Utah expungement statute.

*Nilson*, 45 F.3d at 372 (internal citations omitted).[14] Accordingly, we reject Nunez's contention that New Jersey law itself creates a constitutional right of privacy in an expunged criminal record.[15]

> ability to restrict his freedom of action in a sphere contended to be "private" but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner.
> 424 U.S. at 713, 96 S.Ct. 1155.

**14.** *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1155 (10th Cir. 2001); *Scheetz*, 946 F.2d at 206–207 ("[T]he question of whether a federal constitutional right to privacy has been violated is a distinct question from whether a ... state common law right to privacy has been violated.... [C]ase law cited by the parties as to Pennsylvania confidentiality law cannot control the federal constitutional right.") (internal citation omitted); *Eagle*, 88 F.3d at 626 ("We observe initially that state laws, such as Arkansas' expungement provisions, do not establish the parameters of constitutional rights, like the right to privacy, that are grounded in

substantive theories of due process."); *see also Bagley v. Rogerson*, 5 F.3d 325, 328–29 (8th Cir.1993) ("If we were to hold that the sort of state statute involved here created a liberty interest for federal constitutional purposes, we would be greatly expanding the doctrine of substantive due process. We would be holding, in effect, every state statute which imposes a mandatory duty, or creates a legal right, is constitutional in nature, and the violation of every such statute would be a violation of the Due Process Clause of the Fourteenth Amendment. This is emphatically not the law."); *cf. Mangels*, 789 F.2d at 839 ("Rights of substantive due process are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution.").

**15.** Nunez's alternative theory of liability—that defendants' disclosure of his expunged criminal record to union leaders and public officials violated his "constitutional right to reputation"—is meritless, as the Due Process Clause does not protect a defendant from

For the foregoing reasons, we will affirm the order of the District Court.

reputational injury resulting from dissemination of his criminal acts. Appellant's Br. at 6; *see Nilson*, 45 F.3d at 372 (finding no constitutional violation when police department published details of expunged criminal record of public school teacher); *Mangels*, 789 F.2d at 839 (finding no constitutional violation when Denver Fire Department published dismissal of two of its members for drug usage);

*Holman v. Central Ark. Broadcasting Co.*, 610 F.2d 542, 544 (8th Cir.1979) (finding no constitutional violation when state officials "allow or facilitate publication of an official act such as an arrest"); *Baker v. Howard*, 419 F.2d 376, 377 (9th Cir.1969) (finding no constitutional violation when police officers circulate false rumors that person has committed a crime).