**CLD-184**                                                         **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1700
_____

RANDY ANDREW RAMER,

Appellant

v.

MARY LONG; RON WELLER; DANIEL SHOOP
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 09-cv-01791)
Magistrate Judge:  Honorable John E. Jones, III
_____

Submitted for Possible Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
**May 12, 2011**

Before:  RENDELL, FUENTES and SMITH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 10, 2011)

_____

OPINION
_____

PER CURIAM

Randy Andrew Ramer, proceeding pro se, appeals from the District Court's order

1

granting the defendants' motion for summary judgment. For the reasons that follow, we will summarily affirm.

Ramer, who claims that he is "handicapped − mentally retarded," lives with his parents, his sister, and his sister's three minor children. On July 26, 2009, the Pennsylvania State Police cited Ramer for making sexual gestures towards three individuals, including a nine year-old girl. The Northumberland County Children and Youth Services office ("NCCYS") opened an investigation. During the investigation, two NCCYS caseworkers, Ronald Weller and Maryann Long, discovered that Ramer had admitted to molesting his niece in 1999. On August 26, 2009, Weller went to Ramer's home. Ramer's father informed Weller that, pursuant to a safety plan previously put into place by the NCCYS, Ramer was permitted to reside in the family home provided that he was not left alone with the minor children. Later, Weller contacted the ChildLine Registry, a database of sexual offenders, and learned that a report of the sexual abuse in 1999 was classified as "indicated."[1] Meanwhile, Long contacted the Adult Probation and Parole Department to gather more information about Ramer. A probation officer told Long that the charges against Ramer stemming from the July 2009 citation were still pending and that, in a separate incident, Ramer was alleged to have harassed a woman by

---

[1] An "indicated report" is issued if an investigation determines that "substantial evidence of the alleged abuse exists" based on "[a]vailable medical evidence," "[t]he child protective service investigation," or "[a]n admission of the acts of abuse by the perpetrator." 23 Pa. C.S.A. § 6303(a). A report may also be classified as "founded" or "unfounded." 23 Pa. C.S.A. § 6368(c).

calling her repeatedly and asking her out on a date. Long also spoke to the police officer who had cited Ramer.

Weller returned to Ramer's home on September 2, 2009, to inform the family that Ramer could not stay there with the minor children while NCCYS conducted its investigation. After discussing the matter, Ramer's parents agreed that Ramer could stay with his uncle, who lived nearby, until the investigation was complete. Ramer's parents also signed an Action Plan, pursuant to which Ramer was to have no unsupervised contact with the minor children in the home. On September 8, 2009, Weller informed Ramer's parents that he could to return to their home. The charges related to the July 2009 incident were ultimately dismissed. Ramer also successfully moved to have the "indicated report" from 1999 expunged from the ChildLine Registry.[2]

Ramer filed a complaint in September 2009, which he later amended, against Weller, Long, and a probation officer, Daniel Shoop. Ramer alleged that the defendants improperly "forc[ed] [him] out of his residence," failed to "provide [him] with protection under [the Americans with Disabilities Act ("ADA")]," and misidentified him as being

---

[2] The District Court granted the defendants' motion for a protective order, directing the parties not to destroy any documentation relating to the "indicated report" before all possible appeals are exhausted and permitting the defendants to retain a sealed copy of the report for five years, which "is to be opened only in the event of civil litigation initiated by [Ramer] or a member of his immediate family relating to the report." To the extent that Ramer challenges this protective order, we conclude that the District Court did not abuse its discretion. Arnold v. Pennsylvania, Dept. of Transp., 477 F.3d 105, 107-08 (3d Cir. 2007).

3

"on bail bond probation." The defendants filed a motion to dismiss, which, since it included exhibits outside the pleadings, was converted to a motion for summary judgment. A Magistrate Judge recommended that the motion be granted, reasoning that Weller and Long were entitled to qualified immunity because Ramer failed to demonstrate that his due process rights had been violated.[3] The District Court adopted the Magistrate Judge's recommendation and granted the defendants' motion for summary judgment. Ramer appealed.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's order granting summary judgment. DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Kaucher v. Cnty. of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006). We may affirm the District Court's grant of

---

[3] The Magistrate Judge also concluded that there was no evidence that Ramer was discriminated against based on a disability, and that Shoop did not violate Ramer's civil rights by disclosing to the NCCYS that he was on bail. We agree with these assessments. See Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 & n.19 (3d Cir. 2009) (noting that to make out a prima facie case of discrimination under the ADA, the plaintiff must establish that, inter alia, he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities); Nunez v. Pachman, 578 F.3d 228, 232 (3d Cir. 2009) (recognizing "established precept that criminal records, including police reports, indictments, guilty verdicts, and guilty pleas, are inherently public−not private−documents and are thus beyond the purview of the Due Process Clause.").

summary judgment on any basis supported by the record. Fairview Township v. EPA, 773 F.2d 517, 525 n.15 (3d Cir. 1985).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009). To determine whether a government officer is entitled to qualified immunity, we ask (1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201–02 (2001). "Because qualified immunity is intended to protect officials absent 'fair warning' that their conduct violates constitutional guarantees, we examine qualified immunity from the perspective of the official at the time of the violation." Burns v. PA Dep't of Corr., -- F.3d --, 2011 WL 1486075, at *10 (3d Cir. Apr. 20, 2011).

In the context of parents and their children, we have recognized a constitutionally protected interest in familial integrity. Croft v. Westmoreland Cnty. CYS, 103 F.3d 1123, 1125 (3d Cir. 1997). That interest, however, "does not include a right to remain free from child abuse investigations." Id. Consequently, courts "must balance the fundamental liberty interests of the family unit with the compelling interests of the state in protecting children from abuse." Id. A social worker's decision to separate family constitutes a

5

substantive due process violation only when it "reach[es] a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" Miller v. City of Phila., 174 F.3d 368, 375-76 (3d Cir. 1999).

Nothing about the conduct of Weller or Long satisfies this standard. They initiated an investigation after receiving a report that Ramer was facing charges for making sexual gestures toward three individuals, including one minor. During the investigation, Weller and Long discovered that Ramer previously had admitted to molesting his niece. Weller contacted the ChildLine Registry and found that that Ramer was the subject of an "indicated" report, denoting that substantial evidence of the abuse existed. Weller also visited Ramer's home and learned that he was living with his sister's three minor children. Long was informed by a probation officer that Ramer had been accused of harassing a woman by repeatedly calling her and asking her out on a date. Based on this information, Weller and Long reasonably could have believed that the minor children who lived with Ramer were in danger of abuse. Under these circumstances, we conclude that Ramer's substantive due process rights were not violated when he was directed to leave his home during the pendency of the the NCCYS's investigation. Croft, 103 F.3d at 1126 ("focus[ing] [on] whether the information available to the defendants at the time would have created an objectively reasonable suspicion of abuse justifying the degree of interference with the [parents'] rights."). Furthermore, Ramer's procedural due process claim fails because he has not demonstrated any compensable injury resulting from his

six-day stay with his uncle, who lived near the Ramer residence. <u>Berman v. Young</u>, 291 F.3d 976, 985 (7th Cir. 2002) (holding that plaintiffs who raised a procedural due process claim based on failure to initiate a judicial hearing following removal of a child from the home "must demonstrate actual damages resulting from the delay in the post-deprivation hearing.").

For the foregoing reasons, we conclude that no substantial question is presented by this appeal. <u>See</u> I.O.P. 10.6. Accordingly, we will summarily affirm the District Court's judgment.